Filed 7/26/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LARRY AANDERUD, et al., | F073277 |
| Petitioners, | |
| v. | (Super. Ct. No. BCV-15100925-SPC) |
| THE SUPERIOR COURT OF KERN COUNTY, | |
| Respondent; | **OPINION** |
| VIVINT SOLAR DEVELOPER, LLC, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; Petition for Writ of Mandate.  Sidney P. Chapin, Judge.

Kostas Law Firm, James S. Kostas; Law Office of Eugene E. Siegel and Eugene E. Siegel for Petitioners.

No appearance for Respondent.

Wilson Sonsini Goodrich & Rosati, Keith E. Eggleton and Dale R. Bish for Real Party in Interest.

-ooOoo-

Larry and Margaret Aanderud entered into an agreement with Vivint Solar Developer, LLC (Vivint Solar), pursuant to which Vivint Solar agreed to install a solar

power generating system on the Aanderuds' property in exchange for the Aanderuds' agreement to purchase the solar power generated by the system. The Aanderuds later sued Vivint Solar in superior court, seeking rescission of the agreement and asserting individual and class claims for declaratory relief and violations of the Unfair Competition Law (UCL), Business and Professions Code section 17200, et seq. The trial court granted Vivint Solar's petition to compel arbitration based on the arbitration provision in the agreement, ordered the Aanderuds to submit their individual claim to arbitration, and dismissed the class claims without prejudice.

The Aanderuds assert the trial court erred in (1) dismissing the class claims, as under California law statutory claims for injunctive relief are not subject to compulsory arbitration; and (2) finding the arbitration provision was enforceable, as the provision does not meet certain minimum standards required for the arbitration of public claims, and is procedurally and substantively unconscionable. The Aanderuds also contend a clause in the arbitration provision that delegates to the arbitrator "the determination of the scope or applicability" of that provision (the delegation clause) is unenforceable.

We will treat this appeal as a petition for writ of mandate. We conclude that the delegation clause is enforceable and therefore it is the arbitrator, not the court, who is required to determine the enforceability of the arbitration provision and whether it covers class claims. Accordingly, we will issue a peremptory writ of mandate commanding the trial court to vacate that portion of its order in which it found the arbitration provision is not unconscionable or unenforceable, the claims asserted in the complaint are arbitrable, and the arbitration provision's prohibition against bringing class claims is enforceable. We also vacate the order dismissing the class claims. In all other respects, the peremptory writ challenging the order compelling arbitration is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2014, the Aanderuds entered into a 20-year solar power purchase agreement (SPPA) with Vivint Solar. Vivint Solar agreed to install a solar power

2.

generating system on the Aanderuds' property, while the Aanderuds agreed to purchase all the solar power generated by that system. Vivint Solar completed installation of the system on the roof of the Aanderuds' home the following month. According to the Aanderuds, there were delays in completing the work and as of February 2015, Vivint Solar had not completed the installation or interconnection of the system to the power grid. The Aanderuds sent Vivint Solar a notice of cancellation and rescission of the agreement, but Vivint Solar did not remove the system or restore their home to its pre-installation condition.

The Aanderuds filed this lawsuit in September 2015. They allege that Margaret allowed a Vivint Solar salesperson, who appeared at her home unannounced, to make a sales presentation regarding Vivint Solar's solar power products and services. During the presentation, the salesperson explained that under the SPPA, Vivint Solar would design and install the solar power system on the Aanderuds' property, bear all associated costs, interconnect the system with the Aanderuds' utility provider, and service and maintain the system at its sole cost and expense for the entire 20-year contract term. The Aanderuds' only responsibility was to pay Vivint Solar a flat fee of $.15 per kilowatt hour for all solar power the Aanderuds used. The salesperson produced a copy of the pre-printed form SPPA, explained its terms in about five minutes, and showed Margaret where to initial, telling her that she could execute the SPPA for her husband. Margaret then initialed the agreement for both herself and Larry, who was in another room and not present during the presentation. The salesperson did not verbally explain the three-day right to cancel.

The Aanderuds allege the SPPA violated the California home improvement and home solicitation laws in numerous ways, and as a proximate result of these violations, they were unaware of the true scope and extent of their obligations and potential liabilities, Margaret was unaware of the number of kilowatt hours and corresponding charges she might expect to be responsible for each month, and they never received

notice of their cancellation rights. In addition to their own interests, the Aanderuds seek to represent a class of similarly situated consumers consisting of all persons who entered into SPPA transactions with Vivint Solar in the past four years where the SPPA contained the same provisions as the Aanderuds' SPPA and who were subjected to the same business practices.

The complaint alleges three causes of action. In the first, the Aanderuds seek rescission and restitution as to themselves in their individual capacity. The other two causes of action are brought on behalf of the Aanderuds and the proposed class. In the second, the Aanderuds seek declaratory relief as to the parties' "respective rights, duties and obligations under the pre-printed form SPPA," and in the third, they seek injunctive relief under the UCL to "ensure Vivint's compliance with applicable law and to deter future wrongdoing." The Aanderuds also seek attorney fees on a private attorney general theory.

Vivint Solar filed a petition to compel arbitration pursuant to an arbitration provision in the SPPA. That clause, entitled "5. Arbitration of Disputes," provides that if Vivint Solar's customer service department is unable to resolve the customer's concern, "You and We agree to resolve any Dispute (as defined below) through binding arbitration or small claims court instead of courts of general jurisdiction. BY SIGNING BELOW, YOU ACKNOWLEDGE AND AGREE THAT (I) YOU ARE HEREBY WAIVING THE RIGHT TO A TRIAL BY JURY; AND (II) YOU MAY BRING CLAIMS AGAINST US ONLY IN YOUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. You and We agree to arbitrate all disputes, claims and controversies arising out of or relating to (i) any aspect of the relationship between You and Us, whether based in contract, tort, statute or another legal theory; (ii) this Agreement or any other agreement concerning the subject matter hereof; (iii) any breach, default, or termination of this Agreement; and (iv) the interpretation, validity, or

4.

enforceability of this Agreement, including the determination of the scope or applicability of this Section 5 (each, a "*Dispute*")."

The arbitration provision states how to institute an arbitration, which "shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures (*available at:* http://www.jamsadr.com/rules-streamlined-arbitration, the "*JAMS Rules*") and under the rules set forth in this Agreement." The arbitrator is bound by the terms of the agreement and is not permitted to award "punitive, special, exemplary, indirect, or consequential damages to either party." If the customer initiates arbitration, the customer is responsible to pay $250, and "[a]ll attorneys' fees, travel expenses, and other costs of the arbitration shall be borne by You and Us in accordance with the JAMS Rules and applicable law." The arbitration clause further provides that "[n]othing in this Section 5 shall preclude You or We from seeking provisional remedies in aid of arbitration from a court of competent jurisdiction."

In their petition, Vivint Solar argued that the Aanderuds' individual claims were subject to mandatory arbitration under the arbitration clause and asked the trial court to order arbitration of their claims and either dismiss the complaint with prejudice or stay the proceedings until conclusion of the arbitration. Moreover, because the arbitration provision's class action prohibition was valid and enforceable, the arbitration would be only on the Aanderuds' individual claims.

The Aanderuds opposed the petition, arguing (1) the arbitration provision does not provide the minimum protections required for arbitration of the non-waivable statutory rights alleged in the complaint; (2) the arbitration provision is unconscionable; (3) the delegation of the threshold issue of arbitrability to the arbitrator contained in the arbitration provision is unenforceable; and (4) the UCL claims are not subject to arbitration. The Aanderuds submitted Margaret's declaration in support of their opposition, in which she explained what occurred during the salesperson's presentation; stated that she did not see the arbitration provision or read it before signing the SPPA,

5.

and it was not explained to her; she did not see the additional terms and conditions that were on the back of the SPPA, and she could not read them even with her glasses on; and she had no prior experience negotiating contracts, she graduated high school in 1957, she had no other formal education, and she had been a homemaker since 1969. She also stated that she and her husband live on a fixed income and could not afford to pay the costs of arbitration.

The Aanderuds asked the trial court to take judicial notice of (1) the "JAMS Streamlined Arbitration Rules & Procedures"; (2) the representative fee schedules for JAMS arbitrators that handle breach of warranty and contract matters; (3) the "JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness"; (4) a sample copy of the pre-printed SPPA that Vivint Solar uses in California that is identical to the Aanderuds' SPPA; and (5) the federal poverty guidelines. In addition, the Aanderuds' co-counsel declared that he spoke with a JAMS case management employee who advised there was a $1,200 filing fee and $5,000 retainer to set up an arbitration, and the arbitrator would determine later the additional deposit requirements for the actual arbitration hearing.

In reply, Vivint Solar argued the arbitration provision did not prevent the Aanderuds from pursuing their statutory rights and was not unconscionable. Vivint Solar also argued the delegation clause was clear and unmistakable, and therefore compelled arbitration of the Aanderuds' claims. Finally, Vivint Solar asserted the UCL claims were subject to arbitration.

The trial court granted the petition as to the individual claims asserted in the complaint. The trial court found that the arbitration clause was neither procedurally nor substantively unconscionable, and all of the claims were arbitrable, including the UCL claims. The trial court dismissed the class claims without prejudice and stayed the action pending the final decision in arbitration.

**DISCUSSION**

The Aanderuds contend the trial court erred in sending their individual claims to arbitration and dismissing the class claims. Specifically, they assert the arbitration provision and the delegation clause contained in the SPPA are unenforceable, and their statutory injunctive relief claims are not subject to arbitration under California law, which they contend applies rather than the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.). We begin with the issue of whether the order granting arbitration is appealable and then discuss the merits of the Aanderuds' claims.

I.       Appealability

A trial court order compelling arbitration ordinarily is reviewable only after the arbitration is complete and a party appeals from the resulting judgment. (*Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1121-1122; *Muao v. Grosvenor Properties* (2002) 99 Cal.App.4th 1085, 1088-1089.) The Aanderuds, however, contend the order compelling arbitration is appealable under the death knell doctrine, which permits the appellate court to review an order denying a motion to certify a class when it is unlikely the case will proceed as an individual action. (*Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1098.)

The death knell doctrine applies when an order "(1) amounts to a de facto final judgment for absent plaintiffs, under circumstances where (2) the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered . . . ." (*In re Baycol Cases I and II* (2011) 51 Cal.4th 751, 759.) The doctrine has been applied to permit immediate appeal from an order made in a putative class action requiring arbitration of individual claims and waiving class arbitration because such an order is effectively the "death knell" of the class litigation. (*Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1288.)

While Vivint Solar appears to concede the dismissal of the class claims without prejudice amounts to a de facto final judgment, it contends the death knell doctrine does

7.

not apply because, unlike the denial of class certification where remaining claims are often impractical to pursue on an individual basis, there is no suggestion the Aanderuds, or individual members of the putative class, would be deprived of an effective remedy. Vivint Solar asserts there is little risk that an effective final judgment will not be entered here because the relief the Aanderuds seek is not "de minimis" and there is no suggestion they could not secure counsel to represent them in the arbitration proceedings. Vivint Solar also asserts the death knell doctrine does not apply to an order compelling arbitration.

We need not decide whether the Aanderuds' appeal comes within the death knell doctrine. Instead, we exercise our discretion to treat the appeal as a petition for writ of mandate. "[W]hen warranted by the circumstances, immediate review of an order granting a motion to compel arbitration may be obtained by a petition for writ of mandate." (*Garcia v. Superior Court* (2015) 236 Cal.App.4th 1138, 1149.) Here, "writ review is proper to avoid an arbitration based on erroneous rulings of law, which may result in needless delay and expense." (*Da Loc Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 244; see *Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15, 19-20 [treating appeal as a petition for writ of mandate where the issue of arbitrability was one of law and had been fully briefed, the record was adequate to consider the issues, and dismissal of the appeal would inevitably lead to reversal of the order compelling arbitration after undergoing the expense of arbitration].) We find this principle applies here and therefore elect to treat the appeal as a petition for writ of mandate.

II.     Arbitration Generally and the Standard of Review

California and federal law both favor enforcement of valid arbitration agreements. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 (*Armendariz*), abrogated in part on another ground in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339-340.) The California Arbitration Act (CAA), Code of Civil

8.

Procedure[1] section 1280 et seq., sets forth "a comprehensive scheme regulating private arbitration in this state." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) Through this scheme, "the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.] Consequently, courts will ' "indulge every intendment to give effect to such proceedings." ' " (*Ibid.*) "In cases involving private arbitration, '[t]he scope of arbitration is . . . a matter of agreement between the parties' [citation], and ' "[t]he powers of an arbitrator are limited and circumscribed by the agreement of stipulation of submission." ' " (*Id.* at pp. 8-9.) "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (§ 1281.)

"California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration." (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686 (*Coast Plaza*).) It is the party opposing arbitration who bears the burden to show the arbitration provision cannot be interpreted to cover the claims in the complaint. (*EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1321; *Buckhorn v. St. Jude Heritage Medical Group* (2004) 121 Cal.App.4th 1401, 1406.) There is no public policy, however, that favors the arbitration of disputes the parties did not agree to arbitrate. (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 (*Engineers & Architects Assn.*).)

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

938, 944 (*First Options*).) Thus, an arbitration agreement is governed by contract law and is construed like other contracts to give effect to the intention of the parties. (*Crowell v. Downey Community Hospital Foundation* (2002) 95 Cal.App.4th 730, 734; *Maggio v. Windward Capital Management Co.* (2000) 80 Cal.App.4th 1210, 1214-1215 [the ordinary rules of contract interpretation apply to an arbitration provision.]; Civ. Code, § 1636.]) "If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.)" (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264.)

A petition to compel arbitration is simply a suit in equity seeking specific performance of a contract. (*Engineers & Architects Assn.*, *supra*, 30 Cal.App.4th at p. 653.) The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement, while the party opposing the petition bears the burden of establishing a defense to the agreement's enforcement. (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 239 (*Tiri*).)

When conflicting extrinsic evidence was not offered below, we apply a de novo, or independent, standard of review on appeal from a trial court's determination of whether an arbitration agreement applies to a particular controversy. (*Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 711; *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1670.) Since the parties did not introduce conflicting evidence, the trial court's ruling on arbitrability is a conclusion of law, and we independently interpret the contract. (*Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 551-552 (*Dream Theater*); *Coast Plaza, supra,* 83 Cal.App.4th at p. 684.)

III.    The Delegation Clause

We begin with the delegation clause, as it disposes of the parties' contentions.

The Aanderuds concede the arbitration provision contains a delegation clause, which delegates the issue of the enforceability of the SPPA, including the determination of the scope or applicability of the arbitration provision, to the arbitrator. As Vivint Solar points out, under this provision it is up to the arbitrator, not the trial court, to determine

10.

enforceability of the arbitration provision. The Aanderuds, however, contend the delegation clause is not enforceable because it is not clear and unmistakable and is unconscionable.

Here, although the parties raised the issue of the enforceability of the delegation clause below, the trial court did not explicitly decide the issue. Instead, it found that the arbitration agreement was not unconscionable and only the Aanderuds' individual claims were arbitrable. Since the trial court decided the enforceability of the arbitration provision itself, we presume it impliedly found the delegation clause did not apply. Accordingly, we must determine whether the trial court erred in so finding.

"[C]ourts presume that the parties intend courts, not arbitrators, to decide . . . disputes about 'arbitrability,' . . . such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.' " (*BG Group, PLC v. Republic of Argentina* (2014) ___ U.S. ___ [134 S.Ct. 1198, 1206], quoting *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 84.) However, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." (*Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 68–69 (*Rent-A-Center*).)

"Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, . . . so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." (*First Options, supra,* 514 U.S. at p. 943; see also *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 243 (*Sandquist*) ["No universal one-size-fits-all rule allocates that question to one decision maker or the other in every case. Rather, 'who decides' is a matter of party agreement"].) "Although threshold questions of arbitrability are ordinarily for courts to decide in the first instance under the FAA [citation], the '[p]arties to an arbitration agreement may agree to delegate to the arbitrator, instead of a court, questions

11.

regarding the enforceability of the agreement.' " (*Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 239 (*Pinela*).) The examination of who has the primary power to determine arbitrability is conducted, at least initially, through the prism of state law. (*Sandquist*, *supra*, 1 Cal.5th at p. 243-244.)

"There are two prerequisites for a delegation clause to be effective. First, the language of the clause must be clear and unmistakable. [Citation.] Second, the delegation must not be revocable under state contract defenses such as fraud, duress, or unconscionability." (*Tiri, supra,* 226 Cal.App.4th at p. 242; see also *Rent-A-Center, supra,* 561 U.S. at pp. 68, 69, fn. 1.) The "clear and unmistakable" test reflects a "*heightened* standard of proof" that reverses the typical presumption in favor of the arbitration of disputes. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 787 (*Ajamian*).)

Here, the arbitration provision states that the parties "agree to arbitrate all disputes, claims and controversies arising out of or relating to . . . (iv) the interpretation, validity, or enforceability of this Agreement, including the determination of the scope or applicability of this Section 5 [the "Arbitration of Disputes" section]. . . ." This language delegates to the arbitrator questions of arbitrability and is clear and unmistakable evidence that the parties intended to arbitrate arbitrability. (See, e.g., *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1560 [noting delegation clause that provided "[t]he arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement" was clear and unmistakable]; *Momot v. Mastro* (9th Cir. 2011) 652 F.3d 982, 988 [language that delegated authority to arbitrator to determine "the validity or application of any of the provisions of" the arbitration clause was a clear and unmistakable agreement to arbitrate the question of arbitrability].)

This is not the only evidence of the parties' intent to contractually delegate issues of arbitrability to a decision maker other than the court. An arbitration provision's

reference to, or incorporation of, arbitration rules that give the arbitrator the power or responsibility to decide issues of arbitrability may constitute clear and unmistakable evidence the parties intended the arbitrator to decide those issues. (See *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1123 [contract mandated arbitration in accordance with American Arbitration Association (AAA) construction arbitration rules that specify arbitrator's authority to determine the scope of the clause]; *Dream Theater*, *supra*, 124 Cal.App.4th at p. 557 [incorporation of AAA commercial arbitration rules which specified the arbitrator will decide issues over the scope of the arbitration agreement]; *Brennan v. Opus Bank* (9th Cir. 2015) 796 F.3d 1125, 1130 [incorporation of AAA arbitration rules]; *Shaw Group, Inc. v. Triplefine Intern. Corp.* (2d Cir. 2003) 322 F.3d 115, 118, 122 [implied incorporation of provision from International Chamber of Commerce Rules].)[2]

Here, the arbitration provision states that JAMS shall administer the arbitration pursuant to its Streamlined Rules and Procedures, and provides the Internet link to those rules. The JAMS rules assign issues of arbitrability to the arbitrator, as Rule 8 provides that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is

---

[2] Courts in other reported decisions have held that the mere incorporation of arbitration rules into an arbitration agreement, absent other evidence of the parties' intent, is insufficient to show a clear and unmistakable agreement to have arbitrators decide their own jurisdiction. (*Ajamian*, *supra*, 203 Cal.App.4th at pp. 788-791 [rejecting argument that employment agreement's statement that arbitration could proceed according to AAA rules was clear and unmistakable evidence of the parties' intent to arbitrate the enforceability of the arbitration provision under the facts of that case]; *Gilbert Street Developers, LLC v. La Quinta Homes, LLC* (2009) 174 Cal.App.4th 1185, 1195-1196 [mere agreement to be bound by National Association of Securities Dealers rules that allow arbitrators to decide their own jurisdiction is insufficient to show a clear and unmistakable agreement to have arbitrators decide their own jurisdiction].) These cases are distinguishable because in the present case, there is other evidence of the parties' intent to arbitrate the enforceability of the arbitration provision.

sought, . . . shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." Thus, the reference to the JAMS Rules further evidences the parties' clear and unmistakable intent to submit issues of arbitrability to the arbitrator.

The Aanderuds contend that other portions of the SPPA show that the delegation clause is ambiguous, rather than clear and unmistakable. In light of the "clear and unmistakable" standard, courts have refused to enforce seemingly express delegations of arbitrability if they are rendered ambiguous in the face of a contradictory provision. For example, in *Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884 (*Baker*), the appellate court found an agreement did not "clearly and unmistakably" delegate arbitrability when it stated, on the one hand, "that issues of enforceability or voidability were to be decided by the arbitrator," but on the other, "indicated that the court might find a provision unenforceable." (*Id.* at pp. 891, 893-894 [arbitration clause contained severability provision in the event that " 'any provision of this arbitration agreement shall be determined by the arbitrator or *by any court* to be unenforceable. . . .' ".)

The Aanderuds argue that, as in *Baker*, the SPPA's severability provision renders the delegation clause ambiguous because the severability provision indicates that a court, and not just an arbitrator, might find the arbitration provision unenforceable. We agree with Vivint Solar that this does not create an ambiguity. In contrast to the arbitration provision in *Baker*, the arbitration provision here expressly states that any disputes, which include those over the scope and applicability of the arbitration provision, are to be resolved through binding arbitration except those within small claims court jurisdiction. Since arbitration is not at issue in a small claims court action, the small claims court can only find unenforceable provisions of the SPPA other than the arbitration provision. Thus, when the severability clause provides for severance of any provision of the SPPA if it is "held to be invalid, prohibited, or otherwise unenforceable by an arbitrator or court

14.

of competent jurisdiction," the court being referred to is the small claims court, which is not empowered to determine the scope or applicability of the arbitration provision.[3]

The Aanderuds also argue the clause in the arbitration provision that allows for the parties to seek "provisional remedies in aid of arbitration from a court of competent jurisdiction" is inconsistent with a delegation of arbitrability issues to the arbitrator. We disagree. Under this provision, the court is not determining whether the arbitration provision is invalid or unenforceable; instead, it allows a court to issue a provisional remedy in connection with an arbitrable controversy only on the ground the award to which the applicant may be entitled may be rendered ineffectual without provisional relief. (§ 1281.8, subd. (b); *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1247 [provisional relief clause permits parties to arbitration to seek provisional remedies during the pendency of the arbitration.].)[4] Since provisional remedies can be issued without invading the province of any issues delegated to the arbitrator, the provisional remedy clause does not create an ambiguity as to whether arbitrability will be determined by the arbitrator.

Since the parties clearly and unmistakably intended that the issue of arbitrability be determined by the arbitrator, we turn to the issue of whether the delegation clause is unconscionable. An agreement to arbitrate is invalid if it is both procedurally and

---

[3] The other cases the Aanderuds rely on also are distinguishable, as the agreements involved instances of actual ambiguity and none provided for small claims court jurisdiction. (*Pinela*, *supra*, 238 Cal.App.4th at p. 240 [no mention of arbitrator in severability clause]; *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1442-1443 [same]; *Ajamian*, *supra*, 203 Cal.App.4th at p. 783 [no express language that arbitrator was to decide enforceability questions and "court of competent jurisdiction" may determine a covenant is "broad in scope, duration or geographical area"]; *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1565-1566 [no mention of arbitrator in severability clause].)

[4] Provisional remedies include attachment and temporary protective orders, writs of possession, preliminary injunctions and temporary restraining orders, and the appointment of a receiver. (§ 1281.8, subd. (a).)

substantively unconscionable.  (§ 1281; Civ. Code, § 1670.5; *Armendariz*, *supra*, 24 Cal.4th at p. 114.)  The two types of unconscionability need to be present in the same degree, and "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is enforceable, and vice versa." (*Armendariz*, at p. 114.)  The party opposing arbitration has the burden of proving unconscionability.  (*Tiri*, *supra*, 226 Cal.App.4th at p. 244.)  When determining whether a delegation clause is unconscionable, any claim of unconscionability must be specific to the delegation clause.  (*Ibid.*, citing *Rent-A-Center*, *supra*, 561 U.S. at p. 73.)

Procedural unconscionability arises in the making of the agreement, focusing on "the oppression that arises from unequal bargaining power and the surprise to the weaker party that results from hidden terms or the lack of informed choice." (*Ajamian*, *supra*, 203 Cal.App.4th at p. 795.)  There is no question here that the delegation clause is part of a contract of adhesion, as it was drafted by Vivint Solar and presented to the Aanderuds on a take-it-or-leave-it basis.  (*Armendariz, supra,* 24 Cal.4th at p. 113.)  Moreover, Margaret was an unsophisticated party who was given little time to review the SPPA which, coupled with the "arcane nature" of the delegation clause, added to its oppression and surprise.  (*Tiri*, *supra*, 226 Cal.App.4th at p. 246.)

Even though the delegation clause is procedurally unconscionable, the Aanderuds have not shown that it is substantively unconscionable.  Substantive unconscionability focuses on " ' "overly harsh" ' or ' "one-sided" ' results." (*Armendariz, supra,* 24 Cal.4th at p. 114.)  The Aanderuds argue the delegation clause is substantively unconscionable because they cannot afford to pay the arbitration costs associated with having the arbitrator decide enforceability.  (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 920 [courts are not precluded "from using unconscionability doctrine on a case-by-case basis to protect nonindigent consumers against fees that unreasonably limit access to arbitration"]; *Gutierrez v. Autowest, Inc.* (2003)

16.

114 Cal.App.4th 77, 83 ["consumers may challenge a predispute arbitration clause as unconscionable if the fees required to initiate the process are unaffordable, and the agreement fails to provide the consumer an effective opportunity to seek a fee waiver"].)

The arbitration provision addresses the costs of arbitration. It provides: "If You initiate arbitration, You shall be responsible to pay $250. All attorneys' fees, travel expenses, and other costs of the arbitration shall be borne by You and Us in accordance with the JAMS Rules and applicable law." The JAMS Rules require each party to pay "its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the Parties agree on a different allocation of fees and expenses." The Aanderuds argue under these provisions, they would be required to pay not only $250 to initiate the arbitration, but also to share all of the arbitration's costs, including a $1,200 filing fee, a $5,000 retainer to the selected arbitrator, and the arbitrator's fees, which would range from $5,000 to $8,500 per day. The Aanderuds submitted evidence of their gross monthly income and expenses, which show both that they are unable to pay such fees and they do not qualify for a statutory fee waiver available to indigent consumers as provided in section 1284.3, subdivision (b), because their income exceeds 300% of the federal poverty guidelines.

As the Aanderuds recognize, there is a JAMS policy on consumer arbitrations pursuant to pre-dispute arbitration provisions that provides for "Minimum Standards of Procedural Fairness" (the minimum standards). The policy lists ten minimum standards that apply to all JAMS arbitrations where, as here, "a company systematically places an arbitration clause in its agreements with individual consumers and there is minimal, if any, negotiation between the parties as to the procedures or other terms of the arbitration clause." The policy provides that "JAMS will administer arbitrations" pursuant to mandatory pre-dispute arbitration clauses in consumer agreements "only if the contract arbitration clause and specified applicable rules comply with" the ten "minimum standards of fairness."

The seventh minimum standard provides: "With respect to the cost of the arbitration, when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250, which is approximately equivalent to current Court filing fees. All other costs must be borne by the company including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services. When the company is the claiming party initiating an arbitration against the consumer, the company will be required to pay all costs associated with the arbitration."

Vivint Solar concedes on appeal that in light of this provision, it will be required to pay all fees and costs associated with the arbitration.[5] Since the Aanderuds' fees will most likely be limited to $250, the Aanderuds have not established the likelihood that the costs of arbitration will be prohibitively expensive. (*See In re Currency Conversion Fee Antitrust Litigation* (S.D.N.Y. 2003) 265 F.Supp.2d 385, 413 [declining to invalidate a consumer arbitration agreement based on prohibitive costs in light of the above provision of the minimum standards]).

The Aanderuds, however, assert that because the arbitration provision does not comply with all ten of the minimum standards, any arbitration would be governed solely by the JAMS Rules that require pro rata sharing of arbitration expenses. The merits of the Aanderuds' contention are for the arbitrator, not us, to decide, as their contentions go to the "scope and applicability" of the arbitration provision. As we have already found, it is up to the arbitrator to determine whether this dispute is arbitrable, which includes whether the arbitration provision meets the minimum standards of fairness such that

_____

[5] We note the SPPA clause that provides that "[a]ll attorneys' fees, travel expenses, and other costs of the arbitration shall be borne by You and Us in accordance with the JAMS Rules and applicable law" may be in tension with the above provision of the minimum standards, and that this tension cannot be resolved in favor of the SPPA if arbitration is to proceed through JAMS. The SPPA, however, allows for severability if an arbitrator determines that any provision is "invalid, prohibited, or otherwise unenforceable."

18.

JAMS will administer the arbitration, whether the arbitration provision is enforceable, and the scope of the arbitration, i.e. whether it includes individual and class claims. That these determinations are left to the arbitrator does not make the delegation clause substantively unconscionable.

In sum, the delegation clause here is clear and unmistakable, and it is not revocable under unconscionability principles. Vivint Solar asserts that if we conclude the delegation clause is enforceable, we should affirm the trial court's order and not reach the Aanderuds' arguments concerning enforceability of the arbitration provision, as those are properly reserved for the arbitrator. We agree that it is the arbitrator who will consider the conscionability of the agreement and the scope of the arbitration clause, including whether the class arbitration is available under the arbitration provision, and whether the provision purports to waive the Aanderuds' right to seek public injunctive relief in all fora and, if so, what impact this has on the enforceability of the arbitration provision as a whole. (See *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 951-952 [a provision in a pre-dispute arbitration agreement that waives the right to seek public injunctive relief under the UCL and other laws in any forum is unenforceable under California law because it is contrary to public policy]; *Sandquist, supra,* 1 Cal.5th at p. 260 [arbitrator has the power to determine whether an arbitration agreement allows for class arbitration if the agreement allocates the decision to the arbitrator].)

Given this, we cannot simply affirm the trial court's order, as the trial court itself decided issues reserved for the arbitrator, including that the arbitration provision was not procedurally or substantively unconscionable, all of the Aanderuds' claims were arbitrable, and the class claims should be dismissed. Accordingly, while we affirm the trial court's order compelling arbitration, we vacate those portions of the order in which the trial court made findings that are reserved for the arbitrator and dismissed the class claims.

19.

## DISPOSITION

The appeal from the order granting Vivint Solar's motion to compel arbitration is treated as a petition for writ of mandate. The petition is granted in part and denied in part. Let a peremptory writ of mandate issue commanding the superior court to (1) vacate the portions of its order in which it (a) found the parties' arbitration agreement was neither substantively nor procedurally unconscionable; (b) found all claims asserted in the complaint were arbitrable; and (c) found that the Aanderuds could only arbitrate their claims in their individual capacity, and not as a class, and dismissed the class claims without prejudice; and (2) enter a new order submitting all issues concerning the interpretation, validity, or enforceability of the solar power purchase agreement, including the determination of the scope and applicability of the arbitration provision, to arbitration. In all other respects, the peremptory writ challenging the order compelling arbitration is denied. The cause is remanded to the trial court for further proceedings consistent with this opinion. The parties shall bear their own costs in this proceeding.

_____
GOMES, J.

WE CONCUR:


_____
HILL, P.J.


_____
MEEHAN, J.