Filed 11/6/20; Certified for Publication 12/7/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ANNA SANDOVAL-RYAN, Individually and as Successor in Interest, etc.,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>OLEANDER HOLDINGS LLC, et al.,<br><br>Defendants and Appellants. | C089486<br><br>(Super. Ct. No. 34-2016-00199655-CU-NP-GDS) |

Plaintiff Anna Sandoval-Ryan signed admission documents on behalf of her brother, Jesus Sandoval,[1] following his admission to Sacramento Post-Acute (Post-Acute), a skilled nursing facility owned by Oleander Holdings, LLC (Oleander) and Plum

---

[1] Due to the similarity of their surnames, we refer to Jesus Sandoval as "Sandoval" and Anna Sandoval-Ryan as "plaintiff."

Healthcare Group, LLC (Plum Healthcare). Among the documents plaintiff signed were two agreements to arbitrate claims arising out of the facility's care for Sandoval.

Sandoval's condition deteriorated while being cared for at the facility, and he was transferred to a hospital where he later died. Plaintiff sued defendants Post-Acute, Oleander, and Plum Healthcare in superior court; she brought claims on her own behalf and on behalf of Sandoval. Defendants moved to compel arbitration of plaintiff's claims. The trial court denied the motion on the basis the agreements were invalid because they were secured by fraud, undue influence, and duress.

Defendants appeal from the trial court's ruling. They contend the parties agreed to allow the arbitrator to decide threshold questions of arbitrability, and the trial court erred by deciding the issue instead. Disagreeing, we affirm.

## FACTS AND PROCEEDINGS

*Factual Background and Arbitration Agreements*

Plaintiff was the conservator and caretaker of her younger brother Sandoval. On September 2, 2014, Sandoval was admitted to Post-Acute, a skilled nursing facility owned and operated by Oleander and Plum Healthcare, for purposes of rehabilitating him from surgery and returning him to a lower level of care. While undergoing care at Post-Acute, Sandoval developed multiple serious health complications. Sandoval was transferred to the hospital on November 5, where he was found to have multiple pressure ulcers, infection, distended bowel, and fecal impaction. He died on December 24.

At some point after Sandoval was admitted to Post-Acute, plaintiff and a Post-Acute representative signed documentation related to Sandoval's admission to the facility, including two arbitration agreements.[2] One agreement was titled "Arbitration of

---

[2] A facility representative filed a declaration stating she and plaintiff signed the documents on September 9, 2014. Plaintiff stated in her declaration she did not sign the documents until November 4. This discrepancy does not affect our decision.

Medical Malpractice Disputes," and the other "Arbitration of Dispute Other than Medical Malpractice." Each agreement stated it was "optional" and not required to receive care at the facility. Both agreements provided the arbitrations they contemplate "shall be conducted by one or more neutral arbitrators as mutually agreed upon, to be determined when necessary and to be in accordance with discovery procedures set forth in the California Arbitration Act, California Code of Civil Procedure Section 1280 et seq. and the Federal Arbitration Act (FAA)."

*Procedural History*

Plaintiff sued defendants in superior court; she brought claims of elder abuse and violation of the Patients' Bill of Rights on behalf of her brother and claims of negligent infliction of emotional distress and wrongful death on her own behalf. Defendants filed an answer to the complaint and later filed a petition to compel arbitration based on the existence of what it characterized as valid, irrevocable, and enforceable arbitration agreements.

The trial court issued a tentative decision denying defendants' motion to compel arbitration, which it later confirmed without change following argument. The court recognized that courts typically decide questions of enforceability of arbitration agreements but that the parties may agree to delegate such questions to the arbitrator. But the court found no such delegation of threshold questions of arbitrability to the arbitrator in the instant case. The court then found that plaintiff signed the arbitration agreements "as a result of undue influence and/or duress and that therefore grounds for rescission of the agreements exist" and denied the petition "on this basis alone. The court then noted that even if grounds for rescission of the arbitration agreements did not exist, it would have exercised its discretion to deny the motion to compel pursuant to Code of Civil Procedure section 1281.2, subdivision (c).

Defendants timely appealed following notice of entry of the trial court's order denying their petition to compel arbitration.

3

# DISCUSSION

## I

### *Arbitrability Under the FAA*

Defendants contend the arbitration agreement signed by the parties includes a delegation clause that gave the *arbitrator* the authority to decide whether the arbitration agreement is enforceable. Accordingly, defendants claim the trial court erred by determining the (in)validity of the arbitration agreement itself. As we will discuss, we reject defendants' contention.[3]

A. *Arbitration Background*

"Under both federal and state law, arbitration agreements are valid and enforceable, unless they are revocable for reasons under state law that would render any contract revocable." (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 239, citing 9 U.S.C. § 2; Code Civ. Proc., § 1281; *Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal.4th 83, 98.) "Reasons that would render any contract revocable under state law include fraud, duress, and unconscionability. [Citations.]" (*Tiri*, at p. 239.)

"A petition to compel arbitration is simply a suit in equity seeking specific performance of a contract. [Citation.] The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement, while the party opposing the petition bears the burden of establishing a defense to the agreement's enforcement. [Citation.]" (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890 (*Aanderud*).)

Because defendants challenge the trial court's interpretation of the parties' purported contract, our review is de novo. (See, e.g., *Employers Mutual Casualty Co. v.*

---

[3] Defendants do not challenge the trial court's ruling; rather, they challenge only the trial court's decision to decide the issue of arbitrability itself rather than to delegate the decision to the arbitrator.

*Philadelphia Indemnity Ins. Co.* (2008) 169 Cal.App.4th 340, 347 ["Contractual . . . interpretations are questions of law reviewed de novo"].)

B.  *Delegation Clause*

Arbitration agreements are construed to give effect to the intention of the parties. (*Aanderud*, *supra*, 13 Cal.App.5th at p. 890.)  "If contractual language is clear and explicit, it governs.  [Citation.]" (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264.)

When a dispute arises between parties to an arbitration agreement, the parties may disagree not only about the merits of the dispute but also about "the threshold arbitrability question—that is, whether their arbitration agreement applies to the particular dispute." (*Henry Schein, Inc. v. Archer and White Sales, Inc.* (2019) ___ U.S. ___ ___ [139 S.Ct. 524, 527] (*Schein*).)  The high court has recognized that parties may "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." (*Ibid*.)  Such threshold or "gateway" questions of arbitrability include whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.  (*Id.* at p. __ [139 S.Ct. at p. 529].)  Indeed, "an 'agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the . . . court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.' " (*Ibid.*)

The question of who has the power to decide issues of arbitrability "turns upon what the parties agreed about *that* matter." (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 943 (*First Options*).)  If the parties agreed to submit arbitrability questions to the arbitrator, then the court reviews the arbitrator's decision under the same standard it reviews other decisions by the arbitrator.  (*Ibid.*)  "If, on the other hand, the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently.  These two answers flow inexorably

from the fact that arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration. [Citations.]" (*Ibid*.)

Courts presume that the parties intend *courts*, not arbitrators, to decide threshold issues of arbitrability. (*Aanderud*, *supra*, 13 Cal.App.5th at p. 891.) Accordingly, " '[t]here are two prerequisites for a delegation clause to be effective. First, the language of the clause must be clear and unmistakable. [Citation.] Second, the delegation must not be revocable under state contract defenses such as fraud, duress, or unconscionability.' [Citation.] The 'clear and unmistakable' test reflects a '*heightened* standard of proof' that reverses the typical presumption in favor of the arbitration of disputes. [Citation.]" (*Id.* at p. 892.) Where the agreement is silent or ambiguous on the question of who decides threshold arbitrability questions, the court and not the arbitrator should decide arbitrability so as not to force unwilling parties to arbitrate a matter they reasonably thought a judge, not an arbitrator, would decide. (*First Options*, *supra*, 514 U.S. at p. 945.)

Defendants argue clear and unmistakable delegation of threshold arbitrability questions to resolution by the arbitrator, pointing to specific language in the arbitration agreement, a portion of which we have italicized below: "The parties understand that, except as provided below, any claim other than a claim for medical malpractice, arising out of the provision of services by the Facility, the admission agreement, *the validity, interpretation, construction, performance and enforcement thereof,* or which allege wrongful death or violations of the Elder Abuse and Dependent Adult Civil Protection Act, or the Unfair Competition Act, or which seek an award of punitive damages or attorneys' fees, *will be determined by submission to neutral arbitration* as provided by California law, and not by a lawsuit or court process . . . ."

Citing the emphasized language, defendants argue that the arbitration agreement "expressly provided that the parties should submit the issue of its validity, interpretation,

6

and enforceability to the arbitrator." But we do not read the emphasized language that way; instead, it is clear to us that the phrase "the validity, interpretation, construction, performance and enforcement thereof" references the *admission agreement* rather than the arbitration agreement.

The passage quoted above states claims arising out of "the admission agreement, the validity, interpretation, construction, performance and enforcement *thereof*, . . . will be determined by submission to neutral arbitration." (Italics added.) This language signals the parties' agreement to submit questions regarding the validity, interpretation, construction, performance, and enforcement *of the admission agreement* to the arbitrator. Neither that statement nor any other in the arbitration agreement clearly and unmistakably delegated to the arbitrator the resolution of threshold questions regarding the validity of the *arbitration agreement* itself. (Compare with *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 66 [section in arbitration agreement titled "Arbitration Procedures" provided that " '[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable' "]; *Momot v. Mastro* (9th Cir. 2011) 652 F.3d 982, 988 [language that delegated authority to arbitrator to determine "the validity or application of any of the provisions of" the arbitration clause was a clear and unmistakable agreement to arbitrate the question of arbitrability]; *Aanderud*, *supra*, 13 Cal.App.5th at p. 892 [analyzing delegation clause in arbitration agreement providing in part: the parties "agree to arbitrate all disputes, claims and controversies arising out of or relating to . . . (iv) the interpretation, validity, or enforceability *of this Agreement*, including the determination of the scope or applicability of [the 'Arbitration of Disputes' section]" (italics added)]; *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1560 [noting delegation clause providing, "[t]he arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability,

7

or enforceability of this binding arbitration agreement" was clear and unmistakable];

*Tiri v. Lucky Chances, Inc.*, *supra*, 226 Cal.App.4th at p. 237 [arbitration agreement stated in part, "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation *of this Agreement*, including, but not limited to, any claim that all or any part of this Agreement is void or voidable" (italics added)].)

Here, the admission agreement does not include the arbitration agreement.[4] The arbitration agreement repeatedly refers to itself as "this arbitration agreement," which distinguishes itself from the "admission agreement," a separate set of documents. Moreover, even assuming *arguendo* that the term "admission agreement" as stated in the arbitration agreement could somehow be construed to include the arbitration agreement, such an interpretation is not clear and unmistakable in the plain language of the arbitration agreement.

Defendants' reliance on *Schein*, *supra*, ___ U.S. ___ [139 S.Ct. 524] is misplaced. In *Schein*, the high court concluded a court may not decide threshold issues of arbitrability where an arbitration contract contains a delegation clause even if the argument made against arbitrability is "wholly groundless." (*Id*. at pp. ___, ___ [139 S.Ct. at pp. 527-528].) But *Schein* specified, "We express no view about whether the contract at issue in this case in fact delegated the arbitrability question to an arbitrator. The Court of Appeals did not decide that issue. Under our cases, courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.' " (*Id.* at p. ___ [139 S.Ct. at p. 531].) Here, as

---

[4] The arbitration agreements appear in the pages following the admission agreement in the record, but the table of contents of the admission agreement does not include the arbitration agreements as part of that agreement.

8

we have discussed, there is no delegation clause in the arbitration agreement. *Schein* is inapposite.

Absent clear and unmistakable language delegating threshold arbitrability issues to the arbitrator, we conclude defendants' claim lacks merit.[5] Because the arbitration agreement does not include a delegation clause, we need not address whether the basis for the trial court's decision would have been subject to delegation to the arbitrator had such a delegation clause been part of the agreement.

**DISPOSITION**

The order is affirmed. Costs are awarded to plaintiff. (Cal. Rules of Court, rule 8.278.)

/s/
_____
Duarte, J.

We concur:

/s/
_____
Hull, Acting P. J.

/s/
_____
Murray, J.

---

[5] Defendants also challenge the trial court's alternative ruling denying its motion to compel arbitration under Code of Civil Procedure section 1281.2, subdivision (c). Because we reject defendants' argument regarding the trial court's threshold arbitrability determination, we do not reach the court's alternative ruling.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ANNA SANDOVAL-RYAN, Individually and as Successor in Interest, etc.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>OLEANDER HOLDINGS LLC, et al.,<br><br>    Defendants and Appellants. | C089486<br><br>(Super. Ct. No. 34-2016-00199655-CU-NP-GDS)<br><br>ORDER GRANTING PUBLICATION |

THE COURT:

David I. Brown, Sacramento Superior Court judge, has filed a request for publication with this court. It is hereby ordered:

1

1. The opinion in the above-entitled matter filed November 6, 2020, was not certified for publication in the Official Reports. For good cause it now appears the opinion should be published in the Official Reports, and it is so ordered.

FOR THE COURT:


_____/s/_____
Hull, Acting P. J.


_____/s/_____
Murray, J.


_____/s/_____
Duarte, J.

2

EDITORIAL LISTING


APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge.  Affirmed.

Wilson Getty, William C. Wilson, John T. Tsumura; Williams Iagmin and Jon R. Williams for Defendants and Appellants.

Law Office of Sean R. Laird and Sean R. Laird for Plaintiff and Respondent.