Filed 5/20/24  Citizen Power Initiatives for China v. Tencent America CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CITIZEN POWER INITIATIVES FOR CHINA et al.<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>TENCENT AMERICA LLC et al.,<br><br>Defendants and Appellants. | H049519, H049717<br>(Santa Clara County<br>Super. Ct. No. 21CV375169) |

Defendants Tencent America LLC and Tencent International Service Pte. Ltd. (collectively Tencent) operate WeChat, a social media application commonly used by the Chinese-speaking world for electronic communication.  The plaintiffs in this consumer class action allege that Tencent aids the People's Republic of China in monitoring and censoring communications on WeChat.  Tencent twice moved unsuccessfully to compel arbitration and has appealed both rulings.  For the reasons stated here, we conclude that plaintiffs are equitably estopped from contesting assent to an arbitration clause because the claims in their complaint are inextricably intertwined with the terms of service containing the subject arbitration clause.  We will therefore reverse the first order denying the motion to compel arbitration, dismiss the second appeal as moot, and remand the matter for further proceedings.

## I.    BACKGROUND

The plaintiffs in this putative class action are Citizen Power Initiatives for China (a nonprofit organization dedicated to advancing democracy in the People's Republic of

China) and six anonymous WeChat users who live in California. Three of the individual user plaintiffs are citizens of the United States; the other three are citizens of the People's Republic of China.

According to the complaint, WeChat is the predominant way people communicate over the internet in the Chinese-speaking world, holding "an effective monopoly on how the inhabitants of that world communicate with each other electronically." The plaintiffs allege Tencent turns over private user data to the government of the People's Republic of China thus enabling surveillance and censorship. As a result, content on WeChat unfavorable to the ruling Chinese Communist Party is removed, and accounts of users who generate the content are blocked. WeChat users are at times investigated, detained, and punished by the Chinese government because of intercepted communications.

The plaintiffs identify two categories of unlawful conduct. First, the complaint alleges Tencent uses " 'challenged practices' " which allow it to profit from "politically motivated, pro-Chinese Communist Party ('CCP') censorship and surveillance of California WeChat users." Second, the complaint alleges " 'challenged provisions' " in "Tencent's terms of service and privacy policy which, taken together, are oppressive, obfuscatory, and incoherent."

The complaint quotes from three sources of Tencent written policies: an online " 'WeChat Help Center' "; a privacy policy; and terms of service. The terms of service quoted in the complaint are from the 2018 terms of service. Those 2018 terms of service incorporate the WeChat privacy policy by reference. The complaint does not quote any other version of the terms of service. The version of the privacy policy in effect in 2018 is not included in the record on appeal.

The complaint quotes privacy language from the Help Center, including: " 'As content of messages are not permanently stored to our servers nor are data-mined for commercial purposes, any claims that third-parties including members of the WeChat team are "snooping" on your chat messages are incorrect misunderstandings.' " The

2

complaint also quotes privacy language from the privacy policy, including that " 'Only where necessary will we share your information with selected recipients who have a legal basis and valid jurisdiction to request such data.' "  And the complaint quotes privacy language from the 2018 terms of service, including that Tencent may " 'retain or disclose Your Content ... where we believe it is reasonably necessary to comply with applicable laws or regulations ... whether such applicable law or regulation, legal process or government body is of your jurisdiction or elsewhere.' "

Plaintiffs' complaint alleges the foregoing " 'vague and ambiguous privacy provisions' " in "Tencent's terms of service and privacy policy" are among those they characterize as " 'challenged provisions.' "  The complaint alleges the "net effect of such vague and ambiguous language is to leave California WeChat users hopelessly unclear about what is and isn't permitted—and therefore, whether or not their contractual rights have been violated."  The complaint asserts the challenged provisions are unlawful because, among other grounds, they violate the right to privacy in the California Constitution and violate the California Invasion of Privacy Act (Pen. Code, §§ 630 et seq.).

The complaint also affirmatively relies on "promises of privacy ... in the WeChat Help Center and in Tencent's written policies" as creating a "reasonable expectation of privacy."  The complaint does not define "written policies," but the only policies discussed in the complaint (other than the Help Center material) are the 2018 terms of service and the privacy policy incorporated there by reference.

Plaintiffs seek certification of a class of WeChat users who reside in California. They bring 11 different causes of action, including for violation of statutory provisions and constitutional rights to privacy, free speech and equal protection.  The complaint seeks a "declaratory judgment that the challenged provisions are unlawful"; injunctive relief "requiring Tencent to prevent California WeChat user data from being used to improve WeChat's censorship and surveillance systems"; and any other relief the court

3

deems proper.  Plaintiffs allege "California WeChat users are entitled to clear, unambiguous, and testable language with respect to the nature and scope of their privacy."

Tencent responded to the lawsuit by moving to compel arbitration under the arbitration clause contained in the 2018 version of its terms of service, which requires all disputes to be arbitrated before the American Arbitration Association.  None of the plaintiffs expressly agreed to that arbitration clause because they had all created their WeChat accounts several years before the terms of service were revised to include it. Tencent argued the plaintiffs were nonetheless bound by the arbitration clause in the 2018 terms of service because one of the terms they did expressly agree to states that continued use of WeChat after changes to the terms of service constitutes assent to be bound by the revised terms.  Tencent also contended plaintiffs should be equitably estopped from objecting to the arbitration clause because the complaint's claims are inextricably intertwined with the 2018 terms of service.  The trial court denied Tencent's motion to compel arbitration, and Tencent appealed (case No. H049519).

The same day it noticed its initial appeal, Tencent moved again in the trial court to compel arbitration, this time invoking an earlier version of the terms of service that requires all disputes to be arbitrated before the Hong Kong International Arbitration Centre.  Citing the automatic stay of trial court proceedings triggered by Tencent's pending appeal, the trial court found it lacked jurisdiction to rule on the motion.  Tencent appealed that decision as well (case No. H049717).  We ordered the two appeals considered together for briefing, argument, and disposition.

## II.   DISCUSSION

### A. PLAINTIFFS ARE EQUITABLY ESTOPPED FROM CONTESTING ASSENT TO APPLICATION OF THE 2018 ARBITRATION CLAUSE

Tencent challenges the trial court's denial of its motion to compel arbitration under the 2018 terms of service requiring arbitration before the American Arbitration

4

Association.  When an appeal of an order denying a motion to compel arbitration presents a question of law, our review is de novo.  (*Bautista v. Fantasy Activewear, Inc.* (2020) 52 Cal.App.5th 650, 655.)

An arbitration agreement is a contract.  Issues of formation and enforceability are governed by state law principles applicable to contracts generally.  (See *Department of Fair Employment and Housing v. Cisco Systems, Inc.* (2022) 82 Cal.App.5th 93, 99.)  Although public policy favors arbitration, that policy generally does not allow enforcement of an arbitration agreement not consented to by the parties.  (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59.)  But under the doctrine of equitable estoppel, a "party who has *not* signed a contract containing an arbitration clause may nonetheless be compelled to arbitrate when he seeks enforcement of other provisions of the same contract that benefit him."  (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1713 (*Metalclad*).)  Equitable estoppel applies when the nonsignatory's claims are "dependent upon, or inextricably intertwined with," the terms of the agreement containing an arbitration clause.  (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1239 (*JSM Tuscany*).)

It is undisputed that neither the plaintiff nonprofit entity nor the six Doe plaintiffs expressly agreed to the arbitration clause in the 2018 terms of service—the Doe plaintiffs each created their WeChat accounts before 2018 and the nonprofit does not allege that it ever created a WeChat account.  Despite that lack of assent, plaintiffs elected to focus on the 2018 terms of service as the governing terms of service for their complaint.

As we understand the complaint, plaintiffs seek to invalidate the terms in Tencent's 2018 terms of service (and the incorporated privacy policy) that plaintiffs allege are unlawful while retaining the terms in Tencent's "written policies" that they believe are lawful and upon which they relied to form a reasonable expectation of privacy.  They seek "clear, unambiguous, and testable language with respect to the nature

5

and scope of their privacy." Because plaintiffs elected to proceed on the 2018 terms of service and seek *enforcement* of certain terms that benefit them, we conclude their claims are dependent upon and inextricably intertwined with the 2018 terms of service such that equitable estoppel applies. (*Metalclad*, *supra*, 109 Cal.App.4th at p. 1713; *JSM Tuscany*, *supra*, 193 Cal.App.4th at p. 1239.) As a result, plaintiffs are bound by the arbitration clause in the 2018 terms of service unless they can demonstrate the arbitration clause is unenforceable for another reason.

## B. ARBITRABILITY MUST BE DETERMINED BY THE TRIAL COURT ON REMAND

The trial court did not reach plaintiffs' arguments about arbitrability—that arbitration would be unconscionable, and that plaintiffs' claims for public injunctive relief cannot be sent to arbitration under the rule of *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 961. Tencent argues that issues of arbitrability are delegated to the arbitrator under the 2018 terms of service.

Issues of arbitrability are generally determined by the court. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 781.) The parties may specifically agree to delegate those issues to the arbitrator, but that delegation must be " 'clear and unmistakable.' " (*Ibid.*) A "contract's silence or ambiguity about the arbitrator's power in this regard cannot satisfy the clear and unmistakable evidence standard." (*Id.* at p. 782.)

The 2018 terms of service contain a severability clause under the heading "General": "If a court holds that we cannot enforce any part of these Terms as drafted, we may replace those terms with similar terms to the extent enforceable under applicable laws and regulations, without changing the remaining terms of these Terms." (Capitalization omitted.) Various dispute resolution terms apply under the 2018 terms of service, depending on where the user is located. A provision under the heading "Governing Law and Dispute Resolution" states, "any dispute, controversy or claim (whether in contract, tort or otherwise) arising out of, relating to, or in connection with

6

these Terms, including their existence, validity, interpretation, performance, breach or termination, will be referred to and finally resolved by arbitration administered by the Hong Kong International Arbitration Centre." (Capitalization omitted.) But that dispute resolution section does not apply to "a user of WeChat in the United States." For users in the United States, separate "terms expressly replace[] the above 'Governing law and dispute resolution' section of these Terms." The "USA-Specific Terms" state users "irrevocably consent to the exclusive jurisdiction and venue of the state or federal courts of California, for all disputes arising out of or relating to these Terms that are heard in court (excluding arbitration)." (Capitalization omitted.) The terms further provide for disputes to be resolved through "binding individual arbitration before the American Arbitration Association ('AAA') under the Federal Arbitration Act ('FAA') (with such arbitration to be conducted under the AAA's Commercial Arbitration Rules)." The terms also state that if "any other provision of these provisions regarding arbitration is found to be illegal or unenforceable, that provision will be severed but the rest of these provisions regarding arbitration still apply."

It is undisputed that all plaintiffs are based in the United States. The United States-specific arbitration clause refers clearly to mandatory arbitration, but does not address the scope or process of determining arbitrability. We also note the severability clause contemplates "a court hold[ing] that [Tencent] cannot enforce [a] part of these Terms," suggesting at least some limitation on delegation. Especially given the absence of any express language, we do not see a clear and unmistakable delegation of arbitrability questions to the arbitrator.

Tencent points to language from the "Governing Law and Dispute Resolution" section. (Capitalization omitted.) But the United States-specific arbitration clause "expressly replaces" that section, rendering it inapplicable here. Tencent argues the reference to "AAA's Commercial Arbitration Rules" in the United States-specific terms indicates clear and unmistakable delegation of arbitrability because the "AAA rules

7

clearly empower an arbitrator to decide questions of 'arbitrability.' " But here again, we note the severability clause which suggests direct court involvement. (See *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1566 [finding no clear and unmistakable delegation where agreement included a severability provision].) And the United States-specific arbitration clause is not as clear as the arbitration provisions in cases finding clear and unmistakable delegation. (E.g., *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 892 [arbitration provision stated, "the parties 'agree to arbitrate all disputes, claims and controversies arising out of or relating to ... (iv) the interpretation, validity, or enforceability of this Agreement, including the determination of the scope or applicability of' " arbitration provision].) We conclude arbitrability under the 2018 terms of service remains a question for the trial court.

On appeal the parties also discuss unconscionability and the rule of *McGill*, which the trial court did not address in its order denying arbitration. As the trial court is better positioned to address those issues in the first instance, we will remand the matter for the trial court to consider the parties' arguments in connection with arbitrability. (Accord, *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1146 [remanding "fact-specific inquiry" about substantive unconscionability to the trial court].)

Because we are reversing the order denying Tencent's first motion to compel arbitration, Tencent's appeal from the trial court's later order denying its second motion to compel arbitration is moot. We therefore do not reach the arguments about the second motion to compel arbitration.

### III.    DISPOSITION

In case No. H049519, the order denying the motion to compel arbitration is reversed and the matter remanded for the trial court to determine issues related to arbitrability.

In case No H049717, the appeal is dismissed as moot.

8

In the interest of justice, each party shall bear its own costs. (Cal. Rules of Court, rule 8.278 (a)(5).)

_____

Grover, Acting P. J.

**WE CONCUR:**

_____

Lie, J.

_____

Bromberg, J.

H049519, H049717
*Citizen Power Initiatives for China et al. v. Tencent America LLC et al.*