Filed 12/29/21  Faacks v. StoragePro Management CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| CHER LEE FAACKS, | C092404 |
| Plaintiff and Respondent, | (Super. Ct. No. CU19-084121) |
| v. | |
| STORAGEPRO MANAGEMENT CO., | |
| Defendant and Appellant. | |

Plaintiff Cher Lee Faacks brought this putative class action against her former employer, defendant StoragePro Management Company, alleging various wage and hour claims and a derivative claim under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.).[1]  All of plaintiff's claims except for her UCL claim were

---

[1]  Undesignated statutory references are to the Business and Professions Code.

1

ultimately eliminated; the trial court subsequently denied defendant's motion to compel arbitration of that claim.  Defendant appealed from that order; we shall affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Factual Background*

Defendant is a California corporation that transacts business in California. Plaintiff was employed by defendant as a non-exempt employee in Nevada County from August 2018 to September 2018.  The appellate record does not disclose plaintiff's position with defendant or any details about defendant's business.

As a condition of employment, plaintiff and defendant executed a mediation and arbitration agreement (arbitration agreement or agreement) drafted entirely by defendant. As relevant here, it stated:  "Please understand that by signing this agreement, and *except for those matters excluded*, the Employee and Company waive[] any right that, it, he, or she may possess to have employment related disputes litigated in a court or by jury trial." (Italics added.)

The arbitration agreement included a provision identifying the specific types of claims that are subject to arbitration.  It stated:  "Claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant, express or implied; tort claims; claims for discrimination or harassment on bases which include but are not limited to race, sex, sexual orientation, religion, national origin, age, marital status, disability or medical condition; claims for benefits[;] . . . and claims for violation of any federal, state or other governmental constitution, statute, ordinance, regulation, or public policy including but not limited to Title VII of the Civil Rights Act, Age Discrimination In Employment Act, The Americans with Disabilities Act, Family and Medical Leave Act, Equal Pay Act and their state equivalents."

As for excluded claims, the arbitration agreement stated:  "This Agreement does not apply to or cover claims for worker's compensation or unemployment compensation

benefits; claims resulting from the default of any obligation of the Company or the Employee under a loan agreement; *claims for injunctive and/or other equitable relief* for intellectual property violations, *unfair competition* and/or the use and/or unauthorized disclosure of trade secrets or confidential information; or claims based upon an employee pension or benefit plan that either (1) contains an arbitration or other non-judicial resolution procedure, in which case the provisions of such plan shall apply, or (2) is underwritten by a commercial insurer which decides claims.  If either the Company or the Employee has more than one claim against the other, one or more of which is not covered by this Agreement, such claims shall be determined separately in the appropriate forum for resolution of those claims.  Nothing in this Agreement shall preclude the parties from agreeing to resolve claims other than Claims covered by this Agreement pursuant to the provisions of this Agreement."  (Italics added.)

*Procedural Background*

In September 2019, plaintiff filed a class action complaint against defendant, alleging six wage and hour claims (e.g., failure to pay wages, failure to reimburse business expenses) and a derivative claim under the unlawful business practice prong of the UCL.  A first amended class action complaint was filed in November 2019.  It only alleged two claims for relief.  The first, brought under the UCL, sought equitable relief (injunction and restitution--i.e., restoration of money unlawfully withheld) for unfair competition based on defendant's violation of wage and hour laws.  The second, brought under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.), sought penalties for the same wage and hour violations.

After plaintiff voluntarily dismissed her PAGA claim, the trial court denied defendant's motion to compel arbitration of her UCL claim.[2]  In doing so, the trial court

_____

[2]  The appellate record does not include the memorandum of points and authorities defendant filed in support of its motion to compel arbitration.

3

concluded that the express terms of the arbitration agreement excluded unfair competition claims from arbitration.

Defendant timely appealed. The case was fully briefed on October 22, 2021, and assigned to this panel one week later.

## DISCUSSION

Defendant contends the trial court erred in denying its motion to compel arbitration. It argues that plaintiff's UCL claim falls within the scope of the arbitration agreement. We see no error.

I

*Applicable Legal Principles and Standard of Review*

A. *The UCL*

The UCL addresses "unfair competition," which includes any unlawful business act or practice. (§ 17200.) An "unlawful" business practice necessarily " 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143.) " ' "[V]irtually any law or regulation—federal or state, statutory or common law—can serve as [a] predicate for [an] . . . 'unlawful' [prong] violation." ' " (*Candelore v. Tinder, Inc.* (2018) 19 Cal.App.5th 1138, 1155.)

While the UCL's "purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services' " (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 954; it also protects employees. (See *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 177 (*Cortez*); *Alch v. Superior Court* (2004) 122 Cal.App.4th 339, 401.) An employer's unlawful employment practices, such as the failure to pay wages, may form the basis for a UCL claim. (*Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191, 1206; *Hodge v. Superior Court* (2006) 145 Cal.App.4th 278, 283 (*Hodge*).)

4

Although the unlawful prong of the UCL borrows from other laws, it is not a substitute for those laws.  (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370-371 (*Zhang*); *Hodge, supra,* 145 Cal.App.4th at p. 284.)  "[T]he UCL is not simply a legislative conversion of a legal right into an equitable one.  It is a separate equitable cause of action" that is " 'independently actionable' and 'subject to distinct remedies.' " (*Hodge*, at p. 284; see *Cortez, supra,* 23 Cal.4th at p. 179 [UCL remedies are cumulative to remedies available under other laws and have the independent purposes of deterrence of and restitution for unfair competition].)

"In enacting the UCL, 'the overarching legislative concern [was] to provide a *streamlined* procedure for the prevention of ongoing or threatened acts of unfair competition.' [Citations.]  Consistent with this objective, the UCL provides only for equitable remedies.  'Prevailing plaintiffs are generally limited to injunctive relief and restitution.' [Citations.]  Damages are not available."  (*Hodge, supra,* 145 Cal.App.4th at p. 284; see also *Zhang*, *supra*, 57 Cal.4th at p. 371.)  Restitution under the UCL includes the restoration of money or property unlawfully obtained or withheld by means of unfair competition.  (*Clifford v. Quest Software Inc.* (2019) 38 Cal.App.5th 745, 749; *Zang*, at p. 371; see *Cortez, supra*, 23 Cal.4th at pp. 177-178 [an order for payment of wages unlawfully withheld from an employee is a restitutionary remedy authorized by the UCL; it is not an order for payment of damages].)

"[T]he equitable remedies of the UCL are subject to the broad discretion of the trial court.  [Citation.]  The UCL does not *require* 'restitutionary or injunctive relief when an unfair business practice has been shown.  Rather, it provides that the court "*may* make such orders or judgments . . . as may be necessary to prevent the use or employment . . . of any practice which constitutes unfair competition . . . or as may be necessary to restore . . . money or property." ' "  (*Zhang, supra*, 57 Cal.4th at p. 371.)  "The purpose of such orders is 'to deter future violations of the . . . statute and to foreclose retention by the

violator of its ill-gotten gains.' " (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1267 (*Bank of the West*).)

While UCL claims seeking restitution and/or private injunctive relief are arbitrable, UCL claims seeking public injunctive relief are not. (*McGill v. Citibank, N.A., supra,* 2 Cal.5th at pp. 955-956; *Clifford v. Quest Software Inc., supra,* 38 Cal.App.5th at p. 751.) "[P]ublic injunctive relief under the UCL. . . is relief that has 'the primary purpose and effect of" prohibiting unlawful acts that threaten future injury to the general public. [Citation.] Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." (*McGill*, at p. 955.) Here, it is not disputed that plaintiff seeks restitution and/or private injunctive relief under the UCL. Thus, the question for us is whether plaintiff's UCL claim is subject to arbitration under the terms of the parties' arbitration agreement.

B. *Arbitration Agreements*

A party to an arbitration agreement may petition the court to compel another party to arbitrate a dispute that is covered by their agreement. (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 15.) "A petition to compel arbitration is simply a suit in equity seeking specific performance of a contract." (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890 (*Aanderud*); see also *Sandoval-Ryan v. Oleander Holdings LLC* (2020) 58 Cal.App.5th 217, 222 (*Sandoval-Ryan*).)

" 'California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration.' " (*Aanderud, supra,* 13 Cal.App.5th at p. 890.) However, "[t]here is no public policy . . . that favors the arbitration of disputes the parties did not agree to arbitrate." (*Ibid.*)

"Courts presume that the parties intend *courts*, not arbitrators, to decide threshold issues of arbitrability," including whether the agreement applies to a particular controversy. (*Sandoval-Ryan, supra,* 58 Cal.App.5th at p. 223.) "Arbitration 'is a matter

of consent, not coercion.' " (*Moritz v. Universal City Studios, LLC* (2020) 54 Cal.App.5th 238, 245.)  Thus, "[a]rbitration of a claim is appropriate 'only where the court is satisfied that the parties agreed to arbitrate *that dispute*.' " (*Id.* at p. 246.)

The scope of arbitration is a matter of agreement between the parties.  (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323; *Villacreses v. Molinari* (2005) 132 Cal.App.4th 1223, 1230.)  " 'When deciding whether the parties agreed to arbitrate a certain matter. . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.' " (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 244 (*Sandquist*).)  "Thus, an arbitration agreement is governed by contract law and is construed like other contracts to give effect to the intention of the parties." (*Aanderud, supra*, 13 Cal.App.5th at p. 890; see *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 525 [" 'The goal of contractual interpretation is to determine and give effect to the mutual intention of the parties' "]; Civ. Code, § 1636 [the mutual intentions of the parties at the time the contract is formed governs interpretation].)  "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ." (Civ. Code, § 1639; see *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1125-1126 ["Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms"].)  If contractual language is clear and explicit, it governs.  (*Bank of the West, supra,* 2 Cal.4th at p. 1264; *Sandoval-Ryan, supra,* 58 Cal.App.5th at p. 222; Civ. Code, § 1638.)

It is well established that any ambiguities in an arbitration agreement drafted entirely by an employer must be construed in favor of the employee.  (*Sandquist, supra,* 1 Cal.5th at p. 248.)  The reason for this rule is to protect the employee who did not choose the language from an unintended or unfair result.  (*Ibid*.)  As our Supreme Court has explained:  " 'Where one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party.  He

is also more likely than the other party to have reason to know of uncertainties of meaning.  Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert.  In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party.' " (*Id*. at p. 247.)  " '[T]he rule requiring the resolution of ambiguities against the drafting party "applies with peculiar force in the case of a contract of adhesion.  Here the party of superior bargaining power not only prescribes the words of the instrument but the party who subscribes to it lacks the economic strength to change such language." ' " (*Id*. at p. 248.)

An order denying a petition to compel arbitration is an appealable order.  (Code Civ. Proc., § 1294, subd. (a).)  When, as here, there is no conflicting extrinsic evidence introduced to aid interpretation, we independently review a party's challenge to the trial court's interpretation of an arbitration agreement.  (*Aanderud, supra,* 13 Cal.App.5th at p. 890; *Brookwood v. Bank America* (1996) 45 Cal.App.4th 1667, 1670.)

II

*Analysis*

As we have set forth above, in this particular case the plain text of the agreement excludes, without limitation, equitable unfair competition claims from arbitration.  The agreement specifically states that it "does not apply to or cover claims for . . . injunctive and/or other equitable relief for . . . unfair competition."  In determining the scope of the parties' arbitration agreement, the ordinary and popular sense of the agreement's language governs, unless the parties expressed a contrary intent.  (*In re Tobacco Cases I* (2004) 124 Cal.App.4th 1095, 1106.)  Thus, based on the clear and explicit language of the agreement, plaintiff's UCL claim is not subject to arbitration.

Defendant contends that principles of contract interpretation dictate that plaintiff's UCL claim falls within the scope of the arbitration agreement, arguing that the manner in which the agreement is written evinces the parties' intent to limit the exclusion of unfair

8

competition claims to only such claims that are related or similar to "claims for intellectual property violations and unauthorized disclosure of trade secret[s] or confidential information." In support of its position, defendant relies on the doctrine of *ejusdem generis* and the following language in the arbitration agreement: "This Agreement does not apply to or cover claims for . . . injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information . . . ." Defendant insists that this language presents no ambiguity and supports a finding that plaintiff's UCL claim is arbitrable.[3] We are not persuaded.

The arbitration agreement cannot be interpreted as narrowly as defendant urges. Had the parties intended to limit the exclusion of unfair competition claims from arbitration in the manner defendant suggests, they could have easily done so. The relevant portion of the parties' agreement broadly excludes from arbitration certain types of claims for "injunctive and/or other equitable relief," including all such claims for unfair competition. There is no language limiting the exclusion of equitable unfair competition claims from arbitration. Defendant's reliance on the *ejusdem generis* doctrine is misplaced, as that doctrine is an interpretative aid to be used only when the language in a contract or statute is ambiguous. (*Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1277; *Zumbrun Law Firm v. California Legislature* (2008) 165 Cal.App.4th 1603, 1619 (*Zumbrun*).) In any event, even if we were to assume that the arbitration agreement is ambiguous, we are not convinced that the *ejusdem generis* doctrine applies here to support defendant's position.

---

[3] Defendant alternatively argues that, to the extent the arbitration agreement is ambiguous, plaintiff's UCL claim is arbitrable because of the strong public policy favoring arbitration. For the reasons we explain *post*, we reject this contention.

"*Ejusdem generis* is a subset of *noscitur a sociis*, which means the meaning of a word may be known from the accompanying words." (*Zumbrun, supra*, 165 Cal.App.4th at p. 1619.) " '*Ejusdem generis* . . . means that where general words follow specific words, or specific words follow general words in a statutory enumeration, the general words are construed to embrace only things similar in nature to those enumerated by the specific words.' " (*Gateway Community Charters v. Spiess* (2017) 9 Cal.App.5th 499, 504 ["*ejusdem generis* ('literally, "of the same kind" ')"]; see *Wishnev v. The Northwestern Mutual Life Ins. Co.* (2019) 8 Cal.5th 199, 213 [the *ejusdem generis* doctrine provides that " 'when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed' "].) In *Wishnev*, our Supreme Court provided the following example to illustrate the application of the *ejusdem generis* doctrine: "[I]n the phrase 'sun, moon, planets, and other large bodies,' the general term 'other large bodies' would be interpreted to mean other large *heavenly* bodies to be consistent with the more specific terms that precede it. The general term would not be given the much broader connotation it might otherwise have: a meaning that might embrace bodies of water or certain professional athletes." (*Wishnev*, at p. 213, fn. 14; see *Zumbrun,* at p. 1619 ["*Ejusdem generis* is typically applied to phrases that list several specific items, then refer to a general reference, using the term 'other.' [Citation.] 'Other' being an inherently ambiguous term, the specific items enumerated are used to qualify the more general item"].)

Defendant argues that the terms surrounding unfair competition--"intellectual property violations" and "unauthorized disclosure of trade secrets or confidential information"--demonstrate that the parties intended to only exclude from arbitration equitable unfair competition claims which are related or similar to those subjects. We are not persuaded. In our view, the *ejusdem generis* doctrine is of no assistance to defendant. As written, the arbitration agreement cannot properly be interpreted to mean that the phrases "intellectual property violations" and "unauthorized disclosure of trade secrets or

10

confidential information" are the only types of equitable unfair competition claims that are excluded from arbitration. Had the parties intended such a meaning, they could have easily said so. Instead, the parties agreed to broadly exclude specific categories of equitable claims from arbitration by using the word "or," which reflects an intent to designate separate, disjunctive categories. (See *White v. County of Sacramento* (1982) 31 Cal.3d 676, 680; *Anderson v. Davidson* (2019) 32 Cal.App.5th 136, 145.)

We also reject defendant's somewhat related contention that plaintiff's UCL claim is arbitrable because the "unfair competition" referred to in the arbitration agreement is limited to the common law tort of unfair competition and does not include statutory unfair competition claims under the UCL. "The common law tort of unfair competition has long been recognized in California." (*Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 394.) It applies to several types of conduct, including " 'the act of "passing off" one's goods as those of another.' [Citation.] That tort 'developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection.' [Citation.] Injunctive relief and damages are available for common law unfair competition involving fraud or an intent to mislead consumers." (*Id*. at p. 393; see *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 192 (conc. opn. of J. Kennard) [" 'The fundamental principle underlying this entire branch of the law is, that no man has the right to sell his goods as the goods of a rival trader' "]; *Bank of the West, supra,* 2 Cal.4th at p. 1263 ["the tort also includes acts analogous to 'passing off,' such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market"].)

Defendant's narrow interpretation of the arbitration agreement is inconsistent with the broad language of the exclusion provision, which excludes from arbitration, without limitation, equitable claims for unfair competition. At most, the language of the agreement is ambiguous as to the meaning of "claims for injunctive and/or equitable

11

relief for . . . unfair competition." However, where, as here, "the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation." (*Sandquist, supra*, 1 Cal.5th at p. 248; see *Oakland-Alameda County Coliseum Authority v. Golden State Warriors, LLC* (2020) 53 Cal.App.5th 807, 823 [ambiguities in a contract are to be resolved against the drafter where extrinsic evidence is lacking or is insufficient to resolve what the parties intended the terms of a contract to mean].) Applying these principles here, we must reject defendant's interpretation of the arbitration agreement. Defendant could have drafted a provision that specifically limited the exclusion of unfair competition claims to only such claims based on the common law tort of unfair competition. It did not. To the extent that this omission created any ambiguity, it is defendant that " 'drafted an ambiguous document, and . . . cannot now claim the benefit of the doubt.' " (*Sandquist,* at p. 248.)

Finally, we find no merit in defendant's contention that plaintiff's UCL claim is arbitrable because it is essentially a claim for wages or other compensation due, which is a type of claim expressly covered by the arbitration agreement. The fatal flaw in this argument is that equitable unfair competition claims are excluded from coverage under the express terms of the agreement, and a UCL claim predicated on a violation of wage and hour laws is a separate equitable claim that is independently actionable and subject to distinct remedies than those available under the Labor Code. (See *Hodge, supra,* 145 Cal.App.4th at p. 284 ["[t]he UCL is not simply a legislative conversion of a legal right into an equitable one" but is instead "a separate equitable cause of action"].) Defendant offers no authority or reasoned argument persuading us that a contrary result is warranted.

## DISPOSITION

The trial court's order denying defendant's motion to compel arbitration is affirmed. Plaintiff shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

          /s/          
Duarte, J.

We concur:


    /s/      
Blease, Acting P. J.


    /s/      
Krause, J.