Filed 2/27/24  Minkovich v. Corbett CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JAN MINKOVICH, | B324319 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22CHCV00377) |
| v. | |
| WILLIAM D. CORBETT et al., | |
| Defendants and Appellants. | |

Appeal from order of the Superior Court of Los Angeles County, Stephen P. Pfahler, Judge.  Reversed.

Ellenoff Grossman & Schole, Eric Landau and Travis Biffar for Defendants and Appellants.

The Cullen Law Firm and Paul T. Cullen for Plaintiff and Respondent.

_____

This appeal arises out of an employment-related action filed by Jan Minkovich against Innovative Payment Solutions, Inc., a digital payment services company, and its chief executive officer, William Corbett (collectively, IPSI).

Although the parties disagree concerning the precise nature of their relationship, IPSI concedes that Minkovich "worked for IPSI for a brief period of time." Minkovich contends that he performed work for IPSI throughout 2020 in reliance on the terms set forth in a written employment agreement, and that IPSI failed to pay him in accordance with that agreement. The agreement bears Minkovich's signature, but no signature from any IPSI representative.

The agreement contains an arbitration provision that requires the parties to arbitrate any disputes "arising under, based on or relating to [the] agreement." (Capitalization omitted.) The arbitration provision provides further that any such disputes shall be governed by the American Arbitration Association's (AAA) commercial arbitration rules, which purport to delegate to the arbitrator any questions concerning the validity of the arbitration provision itself.

Notwithstanding the arbitration provision, Minkovich sued IPSI in the superior court seeking to recover allegedly unpaid wages and other damages. In response, IPSI moved to compel arbitration. The superior court denied IPSI's motion, finding the arbitration provision unconscionable.

The court did not, however, address IPSI's argument that, because the arbitration provision incorporates by reference the AAA's commercial arbitration rules, it contains a "delegation clause" vesting the arbitrator with exclusive jurisdiction to determine the arbitration provision's validity. IPSI now asks us to reverse the order denying its motion to compel arbitration,

2

urging that the superior court improperly ignored the delegation clause and invaded the province of the arbitrator when it found the arbitration provision unconscionable. We agree. Accordingly, we reverse and instruct the trial court, upon remand, to compel to arbitration the parties' dispute regarding the enforceability of the arbitration agreement.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY[1]

Minkovich contends that on January 21, 2020, he entered into a written executive employment agreement with IPSI. The agreement provides that Minkovich shall serve as IPSI's senior vice president of operations and acquisition from January 1, 2020 through December 31, 2023, in exchange for an annual base salary of $120,000, in addition to other compensation. The agreement contains an arbitration provision that provides in relevant part:

"At the option of [IPSI] or [Minkovich], and to the extent permitted by applicable law, any dispute, controversy or question arising under, based on or relating to this agreement, or any breach or failure to comply with the terms hereof . . . , shall be finally and exclusively resolved by binding arbitration administered by the [AAA] under its Commercial Arbitration Rules."

The AAA's commercial arbitration rules, in turn, vest the arbitrator with "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." The rules provide further that "[t]he arbitrator shall have the power to determine the existence or validity of a contract

---

[1] We summarize here only the facts and procedural history relevant to our resolution of this appeal.

3

of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause."

Although the employment agreement bears Minkovich's signature, it bears no signature on behalf of IPSI. Minkovich contends he nonetheless performed work for IPSI from January 1 through December 20, 2020 in reliance on the agreement's terms, and that IPSI failed to pay certain of the wages and other amounts allegedly owed under the agreement. He contends further that, on December 18, 2020, when he "complained . . . about [IPSI's] persistent failure to pay his wages and to sign the [employment] agreement . . . , he was immediately terminated via text message by Corbett." (Capitalization omitted.)

On May 26, 2022, Minkovich filed suit against IPSI in the Los Angeles County Superior Court, asserting causes of action for (1) breach of contract, (2) nonpayment of wages, (3) waiting time penalties, (4) failure to indemnify expenses, (5) violation of Business and Professions Code section 17200, and (6) wrongful termination. The complaint sought in excess of $1 million in damages.

IPSI responded to the complaint by filing a demurrer and a separate motion to compel arbitration. In the demurrer, IPSI argued that Minkovich's breach of contract claim fails because IPSI never signed the employment agreement, and the agreement's terms therefore are unenforceable.[2] IPSI argued in the alternative in its motion to compel that, if the court overruled the demurrer,

---

[2] On December 12, 2023, we granted Minkovich's motion to augment the record on appeal with a copy of IPSI's demurrer.

4

the court must compel arbitration pursuant to the agreement's arbitration provision. In particular, IPSI argued that, by virtue of its incorporation of the AAA's commercial arbitration rules, the arbitration provision contains a delegation clause pursuant to which the parties agreed to reserve for the arbitrator "all questions regarding the validity and enforceability of the alleged agreement."

Minkovich opposed IPSI's motion, arguing that (1) IPSI had waived its right to compel arbitration by purportedly denying the existence of the employment agreement in its demurrer, and (2) the arbitration agreement is unconscionable because it fails to afford Minkovich the opportunity for adequate discovery and purports to require him to pay unconscionable arbitration fees. In addition, Minkovich argued that various provisions of the California Labor Code prohibit arbitration of his claims. Minkovich did not, however, challenge IPSI's contention that, by incorporating the AAA's commercial arbitration rules, the agreement delegates to the arbitrator any disputes concerning the validity and enforceability of the arbitration provision.

In reply, IPSI argued that it denied in its demurrer only the enforceability, rather than the existence, of the employment agreement. It argued further that, under both California and federal law, Minkovich's failure to mount a specific challenge to the delegation clause divested the superior court of jurisdiction to rule on the validity of the arbitration provision as a whole. IPSI also asserted that the Federal Arbitration Act (FAA) preempts certain limits on arbitration imposed by the California Labor Code.

The superior court held a hearing on IPSI's motion and then took the matter under submission. It subsequently issued a written order denying the motion. In the order, the court "accept[ed] the existence of the [employment] agreement [and its embedded arbitration provision] for purposes of the . . . motion"

5

due to Minkovich's failure to make "any specific argument challenging the existence of the unsigned agreement, and the apparent acceptance of the terms through the commencement of the employment relationship." The court then concluded that the arbitration provision "violates the unconscionability standards" because it allows for "the contingent possibility" that Minkovich might be required to pay arbitration fees. The court found further that IPSI had "fail[ed] to establish that [Minkovich's] wage and hour causes of action are subject to arbitration," in light of Labor Code section 229.[3] Finally, the court declined to consider IPSI's argument that the FAA preempts section 229. The court's written ruling did not address IPSI's contention that the delegation clause in the arbitration provision permitted only an arbitrator—and not the superior court—to rule on the arbitration provision's validity.

IPSI timely appealed.

## DISCUSSION

### A. *Standard of Review*

" ' "If the court's order [denying arbitration] is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a

---

[3] Unless otherwise specified, all statutory references are to the Labor Code.

Section 229 provides: "Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate. This section shall not apply to claims involving any dispute concerning the interpretation or application of any collective bargaining agreement containing such an arbitration agreement." (§ 229.)

6

decision of law, then a de novo standard of review is employed." ' [Citation.]" (*Fleming v. Oliphant Financial, LLC* (2023) 88 Cal.App.5th 13, 18.)

### B.  *Legal Principles Governing Enforcement of Delegation Clauses in Arbitration Agreements*

"California and federal law both favor enforcement of valid arbitration agreements." (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 889 (*Aanderud*).)  " 'When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.' [Citation.]  Thus, an arbitration agreement is governed by contract law and is construed like other contracts to give effect to the intention of the parties." (*Id.* at p. 890.)  " '[A]ny doubts regarding the arbitrability of a dispute are resolved in favor of arbitration.' [Citation.]" (*Ibid.*)

"It has long been settled that when parties have agreed to arbitration, challenges to the validity of the underlying contract, including contract defenses such as fraud in the inducement or illegality, are for the arbitrator to decide.  [Citations.]  This is because the arbitration clause is viewed as separate from the underlying contract.  [Citation.]  Thus, allegations that the main contract is unlawful or unconscionable do not affect the enforceability of the arbitration clause." (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1107–1108 (*Nielsen*).)  "However, challenges to the validity of the arbitration clause itself are generally resolved by the court in the first instance." (*Id.* at p. 1108, citing *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 71.)

"An exception to this rule applies when the parties have clearly and unmistakably agreed to delegate questions regarding the validity of the arbitration clause to the arbitrator." (*Nielsen*,

7

*supra*, 22 Cal.App.5th at p. 1108.) " 'There are two prerequisites for [such] a delegation clause to be effective. First, the language of the clause must be clear and unmistakable. [Citation.] Second, the delegation must not be revocable under state contract defenses such as fraud, duress, or unconscionability.' " (*Aanderud, supra,* 13 Cal.App.5th at p. 892; accord, *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 773.)

The first requirement "reflects a 'heightened standard of proof' that reverses the typical presumption in favor of the arbitration of disputes." (*Aanderud, supra,* 13 Cal.App.5th at p. 892, italics omitted.) The second requirement does not necessitate the court reviewing the enforceability of the delegation clause in all cases before it sends questions of arbitrability to the arbitrator. Rather, a court need only consider this issue when a party challenges the enforceability, under state contract law, of the delegation clause specifically, as opposed to challenging the enforceability of the agreement or arbitration agreement as a whole. (See *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1559–1560 (*Malone*).) This is because "[d]elegation clauses have the potential to create problems of circularity. For example, suppose an arbitration agreement delegates the issue of enforceability to the arbitrator. If the arbitrator concludes that the arbitration agreement is, in fact, not enforceable, this would mean that the entire agreement, *including the delegation clause*, is unenforceable—a finding that would undermine the arbitrator's jurisdiction to make that finding in the first place." (*Id.* at p. 1559.) Accordingly, courts treat a delegation clause "as a separate agreement to arbitrate solely the issues of enforceability" (*ibid.*), meaning that, "when a party is claiming that an arbitration agreement is unenforceable, it is important to determine whether the party is making a specific challenge to the enforceability of

8

the delegation clause or is simply arguing that the agreement as a whole is unenforceable. If the party's challenge is directed to the agreement as a whole—even if it applies equally to the delegation clause—the delegation clause is severed out and enforced; thus, the arbitrator, not the court, will determine whether the agreement is enforceable. In contrast, if the party is making a specific challenge to the delegation clause, the court must determine whether the delegation clause itself may be enforced (and can only delegate the general issue of enforceability to the arbitrator if it first determines the delegation clause is enforceable)." (*Id.* at pp. 1559–1560.)

### C. *The Superior Court Erred in Its Ruling on the Validity of the Delegation Provision*

IPSI contends the superior court erred by "addressing and deciding whether the arbitration provisions of the employment agreement were unconscionable when the parties clearly and unmistakably delegated that determination to the arbitrator." In order to assess this argument, we must determine whether the two requirements outlined above have been met. If they have been, then the delegation clause was enforceable, and the court erred in deciding the threshold question of arbitrability.

As to the first requirement of clear and unmistakable intent, IPSI points to the language in the arbitration provision obligating the parties to resolve any dispute relating to the agreement through arbitration under the AAA's commercial arbitration rules. Those rules afford the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement . . . without any need to refer such matters first to a court."

IPSI cites several appellate court decisions holding that "[a]n arbitration provision's reference to, or incorporation of, arbitration rules that give the arbitrator the power or responsibility to decide

9

issues of arbitrability may constitute clear and unmistakable evidence the parties intended the arbitrator to decide those issues." (*Aanderud, supra*, 13 Cal.App.5th at pp. 892–893; *Zhang v. Superior Court* (2022) 85 Cal.App.5th 167, 180–181, review granted Feb. 15, 2023, S277736 [" '[w]here the contract provides for arbitration in conformance with rules that specify the arbitrator will decide the scope of his or her own jurisdiction, the parties' intent is clear and unmistakable, even without a recital in the contract that the arbitrator will decide any dispute over arbitrability,' " capitalization omitted]; *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1123 ["[b]y incorporating [the AAA's construction industry rules] into their agreement, the parties clearly evidenced their intention to accord the arbitrator the authority to determine issues of arbitrability"]; *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 549 (*Dream Theater*) ["the parties state a clear and unmistakable agreement that the arbitrator will decide whether the dispute is subject to arbitration when they incorporate into their agreement the AAA commercial arbitration rules which specify the arbitrator will decide arbitrability, and nothing in the parties' agreement excludes from the jurisdiction of the arbitrator the decision whether the dispute must be submitted to arbitration," capitalization omitted].) We recognize that some courts have reached the opposite conclusion, particularly in the context of employment disputes. (See, e.g., *Beco v. Fast Auto Loans, Inc.* (2022) 86 Cal.App.5th 292, 305 ["[i]n the employment context, and especially under the facts here, we find that incorporation [of the AAA's employment dispute arbitration rules] by reference does not meet the clear and unmistakable test"]; *Aanderud, supra*, 13 Cal.App.5th at p. 893, fn. 2 [collecting cases in which courts "have held that the mere incorporation of arbitration rules into an arbitration agreement,

10

absent other evidence of the parties' intent, is insufficient to show a clear and unmistakable agreement to have arbitrators decide their own jurisdiction"].) These decisions distinguish contrary authority IPSI cites as "involv[ing] commercial matters and parties of relative sophistication" (*Beco, supra*, at p. 305) and often focus on the employment contract at issue being one of adhesion. (See *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 790 ["reference to AAA rules does not give an employee, confronted with an agreement she is asked to sign in order to obtain or keep employment, much of a clue that she is giving up her usual right to have the court decide whether the arbitration provision is enforceable"]; accord, *Beco, supra*, at p. 305.) We conclude the circumstances presented by the instant case are more like the circumstances at issue in the authority IPSI cites than those at issue in the employment dispute cases reaching a contrary conclusion. As a vice president, Minkovich is a party of relative sophistication, and nothing in the record suggests the employment agreement at issue here was a contract of adhesion or that the circumstances under which the parties executed the agreement otherwise factually distinguish it from the cases on which IPSI relies.[4] Thus, under the authority IPSI cites, we conclude that

---

[4] Nor does Minkovich argue that IPSI's authorities are otherwise distinguishable. Rather, Minkovich argues that we should ignore the delegation clause because it appears in AAA's rules governing commercial matters, rather than employment disputes, and because the clause "does not specifically say that the arbitrator has exclusive jurisdiction . . . over the enforceability of the agreement and deciding whether the entire agreement is unconscionable." But—like its commercial arbitration rules—the AAA's employment arbitration rules vest the arbitrator with "the power to rule on his or her own jurisdiction, including any

by incorporating the AAA's commercial arbitration rules, the parties clearly and unmistakably agreed to reserve questions concerning the validity of the arbitration agreement for the arbitrator. The first requirement for enforcing the delegation provision is therefore satisfied.

To assess whether the second requirement for enforcing a delegation clause has been met, we must consider whether Minkovich mounted "a specific challenge to the enforceability of [that] delegation clause or [was] simply arguing that the agreement as a whole is unenforceable." (*Malone*, *supra*, 226 Cal.App.4th at p. 1559.) If the latter, the superior court lacked authority to rule, as it did, that the entirety of the arbitration provision is unconscionable. (*Id.* at pp. 1159–1560; *Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 132 ["under *Rent-A-Center*, '. . . [i]f the . . . challenge is directed to the agreement as a whole—even if it applies equally to the delegation clause—the delegation clause is . . . enforced . . . [and] the arbitrator, not the court, will determine whether the agreement is enforceable' "]; *Aanderud*, *supra*, 13 Cal.App.5th at p. 895 ["[w]hen determining whether a delegation clause is unconscionable, any claim of unconscionability must be specific to the delegation clause"].) Minkovich does not dispute that he failed to raise any specific

---

objections with respect to the existence, scope or validity of the arbitration agreement." This language is sufficient under the authority IPSI cites. (See *Dream Theater, supra*, 124 Cal.App.4th at p. 549 [involving portion of AAA's commercial arbitration rules providing that arbitrator shall have " 'the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement' "].)

challenge to the delegation clause before the superior court. Accordingly, this second requirement is also satisfied.

Minkovich contends that IPSI is judicially estopped from seeking to enforce the arbitration provision because IPSI purportedly disclaimed in its demurrer the existence of the written employment agreement with Minkovich. The record, however, does not support Minkovich's assertion. He is correct that the following heading (which IPSI characterizes as a "mistake") appears in IPSI's demurrer: "No Written Employment Agreement Exists." But immediately below that heading, IPSI concedes the physical existence of the employment agreement and argues merely that it is unenforceable because it is unsigned. IPSI similarly conceded "the physical existence of the [agreement]" in its motion to compel arbitration before the superior court and reiterates this concession on appeal. Finally, Minkovich fails to support his contentions with any legal authority, and we therefore need not address them in any further detail. (See *Crestmar Owners Assn. v. Stapakis* (2007) 157 Cal.App.4th 1223, 1232.)

Accordingly, we conclude the two requirements for enforcing the arbitration agreement's delegation clause have been satisfied. The superior court erred in disregarding the delegation clause and ruling on the validity of the arbitration agreement.[5]

---

[5] In light of our conclusion, we need not address IPSI's remaining contentions, including that (1) the superior court failed to find the arbitration provision procedurally unconscionable, (2) the provision is neither procedurally nor substantively unconscionable, (3) the court erred in its FAA preemption analysis, and (4) the court misinterpreted the jurisdictional reach of section 229.

## DISPOSITION

We reverse the superior court's October 4, 2022 order denying IPSI's motion to compel arbitration and vacate all findings in the order concerning the validity and scope of the arbitration provision. Upon remand, the court shall issue a new order compelling to arbitration the parties' dispute regarding the enforceability of the arbitration clause.

Appellants are awarded their costs on appeal.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

BENDIX, J.

14