Filed 4/2/26  Choe v. City Storage Systems CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JUNE CHOE et al., | |
| Plaintiffs and Respondents, | G064748 |
| v. | (Super. Ct. No. 30-2024-01372944) |
| CITY STORAGE SYSTEMS LLC et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Donald F. Gaffney. Reversed and remanded with instructions.

K&L Gates, Kevin S. Asfour and Lauren E. Elvick for Defendants and Appellants.

Skywheel Law and Virginia Liu for Plaintiffs and Respondents.

\*          \*          \*

Defendants in this case appeal the denial of their petition to compel arbitration of plaintiffs' claims related to a commercial leasing dispute. The individual plaintiff, June Choe, is the owner of the entity plaintiff Poke Pub Corp. (Poke Pub). Choe electronically signed two documents: a contract formalizing Poke Pub's obligations to one of the defendants and Choe's personal guaranty of those obligations.

Neither side disputes that Poke Pub's agreement contained an arbitration clause. But the arbitration clause was part of a separate document that was hyperlinked in the document Choe signed. Choe's personal guaranty contained language alerting Choe to the presence of an arbitration clause in Poke Pub's agreement. Plaintiffs claim Choe was pressured to sign the agreements without taking the time to fully read them, and that plaintiffs were unaware they had agreed to arbitration.

The trial court found the arbitration agreement bound only Choe, not Poke Pub, but that the arbitration agreement was unenforceable against Choe because it was unconscionable. We disagree. Both Choe and Poke Pub, as sophisticated parties engaging in a business transaction, must be held to the terms to which they agreed. We reverse and remand with the instruction that the court grant defendants' petition.

STATEMENT OF FACTS

Choe is, by her own admission, a "seasoned restaurateur" who has a track record of "establish[ing] successful restaurants." Her company, Poke Pub, is a restaurant selling Korean barbecue. Defendant 1750 Newport Blvd CM LLC (Newport) is a company providing shared commercial kitchen space and virtual restaurant concepts to entrepreneurs in the food business.

Choe alleges she was approached by defendants in her Long Beach restaurant and "persuaded to take out a large high interest loan" to

2

fund a new Korean barbecue venture. She was shown a document called "Order Form for Kitchen Services" (order form) electronically.[1] The order form stated that it, "along with the Kitchen Services Terms and Conditions available at" a hyperlinked location on the internet, "together form[ed] an agreement between the Licensor and Customer." The order form identified Newport as the licensor and Poke Pub as the customer.

The order form proposed to give Poke Pub use of one kitchen, designated storage racks, and common areas for a period of 12 months beginning on August 30, 2023. In exchange, Poke Pub had to pay a monthly license fee starting on August 30, 2023, and other expenses.

The order form ended with the following language: "By signing below, each party confirms that it has read and hereby agrees to the terms set forth in this Agreement (including the Terms and Conditions at [hyperlink] . . .)." Choe signed the order form as owner of Poke Pub.

The hyperlinked Kitchen Services Terms and Conditions contains an arbitration clause at paragraph 11, which states in pertinent part as follows: "Arbitration. By entering into the agreement, each party is required to use arbitration to resolve claims or disputes on an individual basis, as further set forth in this section. Except for claims or disputes related to a

---

[1] There appears to be a dispute in the record as to whether Choe reviewed the document on a mobile device shown to her by Newport's emissary, or whether she received the document via e-mail. Defendants' representative filed a declaration stating that Newport sent plaintiffs the order form and personal guaranty via e-mail on May 16, and Choe executed them the following day. However, Choe avers in her declaration that she was shown the document on a mobile device and was not given the chance to fully review it. This factual conflict was not resolved by the trial court, but either way, it appears the parties agree Choe reviewed the document electronically.

party's intellectual property, each party agrees that any claim or dispute arising between the parties, including but not limited to this Agreement, or the breach thereof, will be settled by binding arbitration before a single arbitrator, and not in a court of law. The arbitration will be administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and utilizing its Expedited Procedures. . . . Per the Commercial Arbitration Rules, the arbitrator has the authority to determine whether a claim or counterclaim is subject to arbitration." (Some capitalization and boldface omitted.)

Simultaneously, Choe, in her individual capacity and on behalf of Poke Pub, signed an Agreement of Personal Guaranty, guaranteeing payment of the fees required by the order form.

The guaranty was "made part of the Kitchen Services Agreement" comprising both the order form and terms and conditions.[2] The guaranty ended with the following language: "The parties (including the guarantor) agree that any claims or disputes arising from a) this guaranty or b) the failure to pay fees owed pursuant to the agreement, and for which damages of $20,000 or less are sought are excluded from the arbitration clause as set forth in section 11 of the agreement. As such, a party may, at its own election, commence an action in small claims court in the jurisdiction where the delivery hub is located to resolve any such claim or dispute." (Capitalization and boldface omitted.)

---

[2]  Hereinafter, we refer to the overall agreement as the "kitchen services agreement," which comprises the order form, hyperlinked terms and conditions, and personal guaranty. We refer to paragraph 11 in the hyperlinked terms and conditions as the "arbitration provision."

4

PROCEDURAL HISTORY

After Choe's new venture experienced operational problems, plaintiffs filed a lawsuit. Their amended complaint named City Storage Systems, LLC dba CloudKitchens, Restaurant Technology Solutions, LLC dba Otter, Newport (dba Costa Mesa Kitchens), and Travis Kalanick.[3] Plaintiffs alleged eight causes of action, including intentional and negligent interference with prospective economic advantage, breach of contract, and discrimination in business dealings pursuant to Civil Code section 51.5.

Counsel representing the corporate defendants contacted plaintiffs' counsel demanding that the case be submitted to arbitration. Plaintiffs did not agree.

Defendants filed a petition to compel arbitration. They argued the controversy was covered by the arbitration provision, which was incorporated into the kitchen services agreement between plaintiffs and Newport. Also, because plaintiffs had alleged alter ego and agency liability between them in the complaint, defendants argued the nonsignatory defendants were entitled to enforce the arbitration provision as well.

Plaintiffs opposed the petition, arguing there was no valid agreement to arbitrate because Newport hid the arbitration provision and because the arbitration provision was unconscionable. In support, they attached Choe's declaration, in which she averred (1) she was never provided with a copy of the hyperlinked terms and conditions, (2) the documents were presented in a manner which did not allow negotiation, (3) she did not know the terms and conditions contained an arbitration provision, and (4) she felt

---

[3] According to defendants, Kalanick has never been served or appeared in the case.

5

coerced into signing by representations that kitchen space was quickly filling up.

After a hearing, the trial court denied defendants' petition. First, the court found there was no valid arbitration agreement between Poke Pub and Newport because the arbitration provision was not made visible or conspicuous. It did find an agreement to arbitrate between Choe and Newport because the guaranty contained a reference to the arbitration provision. Even so, it found the arbitration provision to be unconscionable.

Defendants timely appealed.

DISCUSSION

I.

STANDARD OF REVIEW

"'"'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]" [Citation.]'" (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2015) 234 Cal.App.4th 459, 467.) Because the court's decision here rested on the formation and enforceability of a contract, a legal question, we review its decision de novo.

We review the trial court's evidentiary rulings for abuse of discretion. (See *Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446–447.) Defendants also take issue with the court's ruling on their evidentiary objections. However, given that we find the court erred in denying the petition as a matter of law, regardless of the evidentiary rulings, we need not resolve that issue.

6

## II.

### THERE WAS A VALID ARBITRATION AGREEMENT BETWEEN NEWPORT, CHOE, AND POKE PUB COVERING THIS CONTROVERSY

"Under 'both federal and state law, the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate.' [Citation.]" (*Cruise v. Kroger Co.* (2015) 233 Cal.App.4th 390, 396, italics omitted.) "'When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.' [Citations.] More specifically, we look to California law regarding contracts. 'An arbitration agreement is subject to the same rules of construction as any other contract.' [Citation.] The existence of a contract under California law requires four essential elements: parties capable of contracting; their consent; a lawful object; and a sufficient cause or consideration. [Citation.]" (*Fleming v. Oliphant Financial, LLC* (2023) 88 Cal.App.5th 13, 21.)

Plaintiffs do not dispute the validity of the kitchen services agreement. Indeed, they sue in part for the breach of said agreement. They argue the arbitration provision alone was invalid because it was within a hyperlinked document which they had not read. This does not invalidate the contracts they signed.

As the California Supreme Court has said, "[a]n arbitration clause within a contract may be binding on a party even if the party never actually read the clause." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) "If an offeree objectively manifests assent to an agreement, the offeree cannot avoid a specific provision of that agreement on the ground the offeree did not actually read

7

it." (*B.D. v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931, 943 (*Blizzard*); see also *Caballero v. Premier Care Simi Valley LLC* (2021) 69 Cal.App.5th 512, 518 [""[O]ne who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it""].)

This fundamental principle of contract law is especially important here, where "the disputants were sophisticated parties of reasonably equal bargaining power." (See *Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035, 1051 [dictum].) In contrast, the authorities plaintiffs cite involve consumers who purportedly agreed to terms of use while using and browsing websites. (See *Sellers v. JustAnswer LLC* (2021) 73 Cal.App.5th 444, 465 (*Sellers*); *Herzog v. Superior Court* (2024) 101 Cal.App.5th 1280, 1296 (*Herzog*).)

In *Sellers*, the plaintiffs filed a class action against a website providing expert answers to questions. The plaintiffs alleged they had submitted only one question for what they believed to be a one-time fee but were automatically enrolled for a more expensive monthly membership without their knowledge. (*Sellers*, *supra*, 73 Cal.App.5th at p. 452.) The website tried to enforce an arbitration clause in its terms of service, arguing the plaintiffs consented through a "'sign-in wrap' agreement" by clicking a button stating "'start my trial.'" (*Id.* at p. 453.) Stating "the full context of any transaction is critical to determining whether any particular notice is sufficient to put a consumer on inquiry notice of contractual terms contained on a separate, hyperlinked page," the court found simply clicking a button to start a trial was not sufficient to put a consumer on notice of contractual terms. (*Id.* at pp. 453, 480–481.)

8

Similarly, in *Herzog*, multiple plaintiffs sued the manufacturer of a diabetic glucose monitor for products liability. (*Herzog*, *supra*, 101 Cal.App.5th at p. 1285.) The manufacturer sought to compel arbitration in each of the cases based on a so-called "'clickwrap' agreement," in which users of the device's mobile app had to click a checkbox in order to launch the app. The trial court granted the manufacturer's motions to compel arbitration. (*Ibid.*) The plaintiffs petitioned for writ of mandate to vacate the orders compelling arbitration. (*Id.* at pp. 1285–1286.) The court of appeal consolidated the cases and ultimately found the arbitration agreements were not enforceable. (*Id.* at p. 1286.) The court agreed that clickwrap agreements were "generally regarded as enforceable" because they "require[] the user to manifest assent to a website's terms of use" using a checkbox. (*Id.* at p. 1296.) But the court found the plaintiffs had not agreed to arbitrate "[b]ecause the process required to initially launch the . . . [a]pp neither placed prospective app users on constructive notice of the arbitration provision nor resulted in an unambiguous manifestation of assent to the provision." (*Id.* at p. 1305.)

Though the trial court here appeared to place great weight on the fact that the arbitration provision was "hidden in a hyperlink," this alone does not preclude enforcement of an arbitration clause, even in the consumer context. In *Blizzard*, the arbitration provision in question was also contained within a hyperlink. (*Blizzard*, *supra*, 76 Cal.App.5th at pp. 952–953.) The plaintiffs in *Blizzard* were a minor and his father. The minor played an online video game offered by Blizzard. (*Id.* at p. 934.) When he and his father sued, Blizzard moved to compel arbitration based on a clause hyperlinked in its license agreement, which was presented to users when they created and used online gaming accounts. (*Id.* at p. 937.) The entirety of the license agreement was given in a popup notice and there was specific language in the

9

popup advising the user that the agreement contained a binding arbitration agreement and to read it.[4] (*Id.* at p. 939–940.) Because of this extra language advising the user to read the arbitration agreement, the court in *Blizzard* found the user had notice that he needed to click the hyperlink.

Even if the kitchen services agreement did not contain the same advisement as the agreement in *Blizzard*, "'the *full context of any transaction is critical* to determining whether any particular notice is sufficient to put a consumer on inquiry notice of contractual terms contained on a separate, hyperlinked page.'" (*Doe v. Massage Envy Franchising, LLC* (2022) 87 Cal.App.5th 23, 31, italics in original (*Doe*).) Here, the context of the transaction is still very different from *Sellers* and *Herzog*.

Choe and Poke Pub are not consumers or remote website users. Choe is an experienced businesswoman who, along with her company, engaged in an arms-length business transaction with defendants to lease commercial kitchen space for a new venture. Choe admits she physically encountered Newport's representative when he entered her restaurant, and she was shown the order form electronically. She claims she was not given a copy of the hyperlinked terms and conditions, but neither does she establish that she ever asked for a copy or unsuccessfully attempted to click the link. Nor does she aver that she asked for time to review either the kitchen services agreement as a whole, or the arbitration provision specifically mentioned in the guaranty.

---

[4] While the plaintiff in *Blizzard* had created his account before the dispute resolution policy was hyperlinked in the agreement he had to sign, the defendant later updated its agreement in 2017 and 2018 so that the dispute resolution was hyperlinked. (*Blizzard, supra,* 76 Cal.App.5th at pp. 937–940.) The updated agreements were presented in popup windows that the user had to scroll through and accept. (*Id.* at pp. 938–940.)

"It has long been the law in California that 'an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, *contained in a document whose contractual nature is not obvious.*' [Citation.]" (*Doe, supra,* 87 Cal.App.5th at pp. 30–31, italics added.) The documents Choe signed on behalf of herself and Poke Pub were clearly contracts, and she knew them to be so. Plaintiffs cannot escape the terms of contracts they willingly entered but failed to read. We therefore conclude Newport met its burden to show that there was an agreement to arbitrate between it, Poke Pub, and Choe.[5]

III.

THE PARTIES DID NOT CLEARLY AND UNMISTAKABLY AGREE THAT UNCONSCIONABILITY WAS TO BE DETERMINED BY THE ARBITRATOR

The trial court concluded the arbitration provision was procedurally and substantively unconscionable. Defendants initially contend that the court did not have authority to consider the validity of the arbitration provision because that authority had been delegated to the arbitrator.

Parties are free to delegate to the arbitrator issues regarding enforceability of the arbitration agreement. (See *Blizzard, supra,* 76 Cal.App.5th at pp. 956–957.) For such a delegation to be given effect, two elements must be present: (1) "the language of the [delegation] clause must be clear and unmistakable," and (2) "the delegation must not be revocable under state contract defenses such as fraud, duress, or unconscionability." (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 892 (*Aanderud*).)

---

[5]  Because of this conclusion, we need not resolve whether Choe's constructive notice of the arbitration provision also bound Poke Pub.

"The 'clear and unmistakable' test reflects a '*heightened* standard of proof' that reverses the typical presumption in favor of the arbitration of disputes." (*Ibid*.) Absent a clear and unmistakable delegation to the arbitrator, "the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." (*United Public Employees v. City and County of San Francisco* (1997) 53 Cal.App.4th 1021, 1026.)

In this case, the arbitration provision in the kitchen services agreement provides: "Per the Commercial Arbitration Rules, the arbitrator has the authority to determine whether a claim or counterclaim is subject to arbitration," and includes a hyperlink to the American Arbitration Association (AAA) website. The version of the AAA commercial arbitration rules currently available on that website provides, in relevant part: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." (<https://adr.org/media/qielmf0g/2025_commercialrules_web.pdf> at p. 14. [as of March 23, 2026], archived at: <https://perma.cc/PZA9-TUTU>.)

We conclude the delegation clause is not clear and unmistakable. Within the kitchen services agreement, the language of delegation is permissive, and does not preclude the trial court from making the decision regarding enforceability. The hyperlinked rules are mandatory. This alone prevents us from determining delegation is clear and unmistakable.

IV.

THE TRIAL COURT ERRED IN DETERMINING THE ARBITRATION PROVISION
WAS UNCONSCIONABLE

Defendants also argue the trial court erred by determining the arbitrability provision was unconscionable. We agree.

"An agreement to arbitrate is invalid if it is both procedurally and substantively unconscionable. [Citations.] The two types of unconscionability need not be present in the same degree, and 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.] The party opposing arbitration has the burden of proving unconscionability. [Citation.]" (*Aanderud, supra*, 13 Cal.App.5th at pp. 894–895.) Plaintiffs fail to do so.

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' [Citation.] An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' [Citations.] . . . The pertinent question, then, is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required. [Citations.]" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126.) Ultimately, the court is to look to whether unequal bargaining power has resulted in hidden terms or a lack of informed choice on the part of the weaker party. (See *Aanderud, supra*, 13 Cal.App.5th at p. 895.)

Plaintiffs have not shown that the kitchen services agreement was presented to them on a take-it-or-leave-it basis. In her declaration, Choe indicates the contract was "presented in a manner that implied acceptance was non-negotiable." But she does not say what about the transaction gave

13

her this impression. She claims she was pressured to "sign the Order Form hastily and without due diligence," because the "form was presented to [her] on a mobile device, creating a scenario where thorough review was practically impossible." Choe does not say she asked for time to review the document or sought to negotiate its terms and was refused. As we noted *ante*, defendants attest that they e-mailed Choe the document the day before she signed it, thus adding another layer of uncertainty to her characterization of events.

We also see no imbalance in bargaining power. Choe is experienced in the restaurant industry. Plaintiffs point to no evidence they were being forced to enter a new business venture with or to lease space from Newport. Choe states in her declaration that Newport created an aura of urgency by making her feel that she needed to "act swiftly under the threat of lost opportunity" based on the scarcity of kitchen spaces. But this is best characterized as salesmanship and not as the groundwork for an adhesive contract. We conclude the kitchen services agreement was not a contract of adhesion and the arbitration provision was not procedurally unconscionable.

Plaintiffs also fail to show the arbitration provision was substantively unconscionable. The substantive unconscionability analysis focuses on whether the agreement is overly harsh or one-sided. (See *Aanderud*, *supra*, 13 Cal.App.5th at 895.)

The trial court pointed to several aspects of the kitchen services agreement which it concluded benefited defendants more than plaintiffs: (1) the exclusion of intellectual property claims from arbitration, (2) a limitation of Newport's aggregate liability to the amount of monthly license fees paid in the 12 months preceding a claim by plaintiffs, and (3) the exclusion in the personal guaranty of small claims for unpaid fees from

14

arbitration. We disagree that these elements render the arbitration provision one-sided.

Regarding intellectual property, the trial court observed that defendants "operate a cloud kitchen system that uses the Otter platform, which presumably includes intellectual property that Defendants would like to protect." But, as plaintiffs' counsel admitted at the hearing on the petition, plaintiffs also have intellectual property they would potentially want to protect, such as their recipes. Thus, the carve out for intellectual property could benefit both parties.

We also agree with defendants that the presence of a limitation of liability provision in the kitchen services agreement does not render the arbitration provision unconscionable. Such clauses are enforceable in California unless they are "the improper result of unequal bargaining power or contrary to public policy." (*Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1126.) "Generally, 'a limitation of liability clause is intended to protect the wrongdoer defendant from unlimited liability.'" (*Ibid*.) As we have already found, there was no unequal bargaining power here.

The exclusion of small claims for unpaid fees would presumably only impact defendants' claims, in that defendants would be the only ones suing for unpaid fees. But we do not see why the defendants' ability to pursue such claims in small claims court is unconscionable. And even if this exception were suspect, as defendants point out, the trial court could easily sever it from the rest of the kitchen services agreement.

In analyzing unconscionability, we must invoke ""a sliding scale . . . which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater

15

harshness or unreasonableness of the substantive terms themselves." [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910.) Here, the level of substantive unconscionability, if any, is insufficient to tip the analysis in plaintiffs' favor.

The arbitration provision is thus valid and enforceable.[6]

## DISPOSITION

The order denying defendants' petition to compel arbitration is reversed and remanded with instructions for the trial court to enter an order

---

[6] As defendants argue, the arbitration provision may be enforced by nonsignatories who are alleged by the plaintiffs to be agents of the signatory party. (See *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 614.) Here, the complaint alleges that all defendants acted as agents of one another. As such, all defendants are entitled to enforce the agreement.

granting the petition, staying the action, and ordering all parties currently appearing to arbitration. Defendants shall recover their costs on appeal.



BANCROFT, J.*

WE CONCUR:


DELANEY, ACTING P. J.


GOODING, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.